WARREN S. SILLCOCKS, Respondent and Appellant, *v.* PETER W. GALLAUDET and Others, Appellants and Respondents.

*Brokers — hypothecation of customer's securities — customer's right to regain them — purchases on margins — general creditors.*

In 1890 Warren S. Sillcocks employed the firm of P. W. Gallaudet & Co. to buy stocks for him on margins, and as security for such purchases left with them certificate No. 27938 of the stock of the New York, Ontario and Western Railway Company. Various purchases and one sale were made by the firm for Sillcocks, who subsequently deposited with the firm, as further security, certificate No. 27937 of the same stock. None of the stocks purchased for him by the firm were actually delivered to him, but the firm pledged them and many other stocks purchased for other customers for loans made by it. The firm failed, owning at the time no stocks of its own, but carrying for customers many stocks of which its assignee, C. Elliott Minor, took possession. A bank, one of the creditors of the firm, having sold out certain stocks, including certificate No. 27938, which Gallaudet & Co. had pledged to them, Sillcocks claimed that he could trace this certificate, and also certain of the stocks which had been bought on a margin for him. Certificate No. 27937 had, in fact, disappeared, but the firm, when it failed, held certificate No. 26939 for the same number of shares of the same stock.

In an action brought by Sillcocks to recover these securities:

*Held,* that, as to the stocks purchased by the firm for Sillcocks upon margins, he stood in the same position as other customers for whom the firm had purchased other stocks in a similar manner, and had no better equity than they to obtain possession of the stocks purchased, even though he could, and they could not, identify their purchases.

That certificate No. 27938 stood in a different position; that as Sillcocks had pledged it only as security for his operations, he was entitled to regain it since, after its hypothecation, he was able to trace it. (O'Brien, J., dissenting.)

That Sillcocks was not entitled to the possession of certificate No. 26939, which he had never owned, merely because certificate No. 27937 had disappeared, and No. 26939 was for the same number of shares of the same stock.

That the court could not presume that the firm had reserved No. 26939, in place of No. 27937, which they had disposed of without authority.

Appeal by the plaintiff Warren S. Sillcocks from that part of a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 20th day of May, 1892, which, after adjudging that the defendant C. Elliott Minor, as assignee, had received $1,483 from the proceeds of a sale by the National Bank of Commerce of certain securities held by it as col-

lateral to loans made by it to P. W. Gallaudet & Co., and that he had received the further sum of $16,743.12 realized by him, as assignee, from sales of securities formerly belonging to said firm and delivered to him, said Minor, by said bank, adjudged that said sums were charged in equity, in the hands of said assignee, with a trust in favor of the plaintiff, which should be limited to the extent to which the value of the said 100 shares of stock of the New York, Ontario and Western Railroad Company of the plaintiff, included in said loan (meaning certificate No. 27938), bore to the value of all the securities composing and contained in said loan which belonged to other customers of said defendants Gallaudet & Co., but subject, however, to an accounting between all the parties concerned in said securities as to the amount which should be contributed by the owners of the securities not sold by said bank to the owners of those securities which were sold by it to pay the loan for which all were pledged, and as to the amount due from the plaintiff and the other customers of Gallaudet & Co., upon their said respective securities to said Gallaudet & Co., for moneys advanced by Gallaudet & Co. on the respective purchases by said firm of said securities for the plaintiff and the other customers of said firm similarly situated in respect to said loan, and that the plaintiff Warren S. Sillcocks was a general creditor of the said assigned estate of Gallaudet & Co. for any balance due from said firm after deducting whatever may be awarded to him upon said accounting.

Also an appeal by the defendants, Peter W. Gallaudet, Henry Fitch, Jr., and C. Elliott Minor, as assignee for the benefit of creditors of Peter W. Gallaudet and Henry Fitch, Jr., from so much of the said judgment as adjudged that the plaintiff recover costs of the said defendants.

*W. A. Poste,* for the plaintiff, appellant.

*George W. Wingate,* for the assignee, defendant, appellant.

VAN BRUNT, P. J.:

Prior to November, 1890, the defendants, Gallaudet & Fitch, were partners doing business as stock-brokers in the city of New York. In July, 1890, the plaintiff employed the said defendants to purchase for him 200 shares of the capital stock of the New York,

Ontario and Western Railway Company, and left with them, as security for the purchase-price, 100 shares of the same stock, represented by a certificate thereof numbered 27988, which order the defendants, Gallaudet & Fitch, executed. In August, 1890, the plaintiff employed the same firm to buy for him 100 shares of quicksilver mining stock, which they did. In October, they bought for the plaintiff 100 shares New York and New England Railroad Company stock, and subsequently the plaintiff deposited with them, at their request, as additional margin, 100 shares of New York, Ontario and Western Railway stock, represented by certificate No. 27987. Subsequently said firm sold for the plaintiff fifty shares of American Tobacco Company stock, and received the cash therefor. Gallaudet & Fitch never delivered to the plaintiff any of the shares so purchased, nor the proceeds thereof, nor returned to him the certificates deposited by him. In making the purchases for the plaintiff, they advanced for the payment thereof $4,175, and the same remained unpaid to them at the time of their assignment.

It appears that at the time of their assignment the brokers themselves owned no stocks; all that they held belonging to customers for whom they were carrying them upon margin. All the stocks were hypothecated upon various loans, and on closing out these loans in a few cases, a balance of money was delivered to the assignee, but in most cases there was a deficiency. The plaintiff claims that he has been able to trace certain stocks which were pledged as margins, as having been bought for him, and that, therefore, he is entitled to a superior equity over and above other creditors who have not been able to identify any particular stocks as having been purchased for them. This contention we do not think can prevail. These stocks were purchased upon margin, precisely the same as the stocks of other customers, and the same course was pursued with them as with the plaintiff's stocks. And, therefore, there would appear to be no foundation for the plaiaintiff's claim to impress a superior lien upon any of the assets of the firm, because of the disposition of these securities, from that of all the other creditors who were dealing with the stock-brokers upon the same basis. And it is for this reason that it has not been deemed necessary to state, in the foregoing summary of the facts, the particulars in reference to the claims which have been made in respect to the stocks bought.

We think, however, that the plaintiff's claim in respect to the stocks deposited as margin, belonging to himself, stands upon a somewhat different basis; and that, so far as he is able to trace those stocks and their proceeds, he is entitled to a superior equity over the other creditors, whose stocks were purchased upon a margin. There seems to be no reason in equity why such a preference should not be given to property belonging absolutely to the plaintiff, and which the defendant firm only held as security for the advances which they might make in the execution of the orders given by the plaintiff, there being none others similarly situated.

And this brings us to a consideration of the case in respect to the two certificates Nos. 27988 and 27987. It appears that, prior to the assignment, the said firm hypothecated to the Bank of Commerce, with other securities, as collateral against a loan to them from the bank, said certificate No. 27988, and also a certificate of the same stock, No. 26939, hereinafter mentioned. The bank, on default of payment, sold out a part of the securities so pledged, including said certificate No. 27988. The sale made a surplus over the amount due to the bank of $1,483.84. The certificate in question sold for $1,600. The stock which was so hypothecated, that was not sold, was returned by the bank to the assignee, who, after surrendering eight shares of American Cable Company stock to a claimant, sold the rest for $16,743.12. This certificate was directly traced, as above stated, and, pursuant to the principles which have been heretofore enunciated, it would seem that the plaintiff, instead of being entitled to have impressed upon the surplus arising from such sale, a trust limited in its character has a superior equity, and in case no sale had been made, would have been entitled to have insisted upon the sale of the other securities first, so that he might receive his securities intact, and that this right ought to follow the proceeds of the securities pledged.

In respect to certificate No. 27987, it appears that that was sold on the 13th of November, 1890, without the direction or knowledge of the plaintiff; and it is claimed that because at that time the said firm had in their hands another certificate, No. 26939, for the same number of shares, the plaintiff became the equitable owner of such certificate, and that it must be assumed that the firm had reserved and set it aside for him as a matter of fact, and that he was entitled

to follow it when it was put up as a collateral to the Bank of Commerce loan. This we think is a violent assumption, as there is no evidence whatever, except the existence of this certificate, which would justify the same, and this single fact is manifestly insufficient. It seems to be based upon the claim that by the mere pledge of the stock, which the firm had bought for the plaintiff upon margin, they converted the same to their own use, a proposition which we neither admit nor deny because it does not seem to be necessary for the disposition of the questions involved in the case at bar.

We are of opinion, therefore, that the plaintiff was entitled to additional relief to that which was given by the referee, and a new trial must be had. It is, consequently, unnecessary to discuss the question raised by the appeal of the defendant assignee as to his liability for costs.

The judgment must be reversed and a new trial ordered, with costs to the appellant plaintiff to abide the event.

LAWRENCE, J., concurred.

O'BRIEN, J.:

I dissent, for the reason that I think the judgment of the referee correct, both in the extent of the relief granted to plaintiff, and in awarding him costs.

As to the 100 shares of New York, Ontario and Western, represented by certificate No. 27988, I agree with the presiding justice in the view (being plaintiff's property, and directly traced to the bank) that, in case no sale had been made, he would have been entitled to have insisted upon the sale of the other securities first. But other parties similarly situated, and upon a like showing, would have a like equity and a like right. Where, therefore, securities, which belong to third persons, are pledged by the insolvents as collateral for a loan, all have an equal right to have other securities sold first. But the plaintiff here, as against owners of identified stock so pledged, has no superior right or equity. Such superior equity only holds good as against general creditors or persons not establishing title to the identical securities pledged.

It here appears that, among the other securities so pledged to the bank, were some where the persons make a similar claim to that presented by plaintiff. All these securities, as well as plaintiff's,

were sold; and the contest is as to their respective rights in the surplus.

I think the referee correctly states the rule that, while plaintiff is entitled to follow his certificate of stock as far as it can be traced, " even his diligence in prosecuting his claim cannot avail to give him prior equities over other creditors of the insolvent firm similarly situated with himself." " They are all entitled to be heard and to have their rights determined, and to do justice it would require that they should all be brought in, either by suit or on the final account ing " of the assignee.

Upon the question of costs, the referee, in the exercise of his discretion, awarded them to plaintiff. As affecting such discretion, the judgment is more favorable than was conceded by defendants before action.

I find no valid ground presented for interfering with the discretion so exercised by the referee, and I, therefore, think the judgment should be affirmed.

Judgment reversed and new trial ordered, with costs to the appellant, plaintiff, to abide the event.