(36 App. Div. 11.)

RHINELANDER v. NATIONAL CITY BANK OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. December 30, 1898.)

1. ELECTION OF REMEDIES—COMMENCEMENT OF SUIT.
    From an attorney's preparing an affidavit in anticipation of an action for conversion, it cannot be presumed that that remedy was resorted to so as to constitute an election.

2. ASSIGNMENTS FOR CREDITORS—CLAIMS—PRESENTATION—EFFECT.
    A notice served on an assignee for creditors was entitled, "In the Matter of the Assignment of S. & Co.," and made claim for shares of stock in specie which the assignor had converted, and alternatively demanded that, if claimant's stock could not be given to him, he should be preferred. *Held* not to bind claimant to the assignment.

3. PLEDGE OF THIRD PERSON'S PROPERTY—RIGHTS OF OWNERS.
    A firm of brokers, for a debt to a bank, pledged stock left in their hands for safe-keeping and sale, together with stock held by them as collateral. On default of the brokers, the bank sold the pledge, and there was a surplus over the debt. The firm then made an assignment for creditors; and their pledgor tendered the amount of his debt to the assignee, and demanded his stock. *Held* that, as to the surplus in the hands of the bank, neither of the brokers' creditors whose stock they had pledged was entitled to a priority over the other.

Appeal from judgment on report of referee.

Action by Frederic W. Rhinelander, Jr., against the National City Bank of New York and others, to determine the ownership of a fund in the bank's possession. From a judgment distributing the same among plaintiff and certain defendants, plaintiff and all defendants except the bank appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

F. C. Huntington, for plaintiff.
G. H. Adams, for defendant Ayer.
F. K. Pendleton, for defendant Parrish.

PATTERSON, J. The subject-matter of this action is the ownership of a fund in the possession of the National City Bank of New York, as to which that bank makes no claim, but of which it is the

custodian. Four claimants assert rights in and to the fund. It consists of a balance of moneys arising from the sale of various securities which were pledged by Sands & Co., a firm of stockholders, to the bank, for an indebtedness of the pledgors; such sale having been made on the default of the pledgors in payment of their debt to which the securities were collateral. Among the securities thus pledged and sold were certain stocks belonging to the plaintiff, Rhinelander, certain others to the defendant Parrish, and certain others to the defendant Ayer. The claim of each of these parties is based upon the proposition that in equity the balance held by the National City Bank of New York must be regarded as the proceeds of the particular securities belonging to them, respectively; but the defendant Ayer claims priority. Sands & Co. made an assignment for the benefit of creditors to the defendant Cox, who claims only in subordination to the plaintiff and the defendant Parrish. The precise situation of the parties and their claims is the following: The fund amounts to $3,477.65. The plaintiff claims $2,100 thereof, the defendant Parrish claims $637.50 thereof, and the assignee, Cox, claims the remainder. The defendant Ayer claims the whole amount, on the ground that the proceeds of his securities pledged by Sands & Co., and sold by the National City Bank of New York, exceeded largely the whole of the fund in contest, and that he is preferentially entitled thereto. The referee before whom the trial was had, decided that the fund was distributable among the plaintiff, Rhinelander, the defendant Parrish, and the defendant Ayer, proportionately, that the latter had no prior or superior equity, and that the defendant Cox, the assignee, should take nothing. All parties appeal from the judgment entered on that decision, and their several positions are now as follows: First. The defendant Ayer claims the whole fund, and appeals from so much of the judgment as declares him to be entitled only to share therein with the defendant Parrish and the plaintiff. Second. The plaintiff and the defendant Parrish claim that the defendant Ayer is not entitled to share at all in the fund, and, therefore, they appeal from so much of the judgment as awards them only a certain fractional part of the fund; claiming that they should be allowed more. Third. The defendant Cox, the assignee, claims that there is a balance after the payment of the claims of the plaintiff and the defendant Parrish, to which he is entitled, and appeals, substantially, from that part of the judgment which allows participation in the fund by Ayer.

It will thus be observed that the case turns altogether upon the right of the defendant Ayer to participate in the distribution of this fund, and two questions are presented in that relation: (1) Is he entitled to claim at all? (2) If he is so entitled, to what extent? It is urged as against the defendant Ayer that he is excluded from any right in or to the fund, because he elected to pursue remedies incompatible with the specific right of following the proceeds of his stocks into the hands of the National City Bank. It is asserted that he instituted an action against Sands & Co. for the conversion of his stocks, and that thus he selected that remedy; but there is no proof that such an action was ever brought. All that appears is that in the testimony of the defendant Ayer some reference is made to an affidavit which seems to have been prepared by his attorney in anticipation of an action being

brought for conversion, but there is no proof that such an action was brought, or that a summons was served, or any further step whatever taken. It cannot be said that a remedy has been resorted to, simply because it may have been in the contemplation of a party at some time to avail himself of that remedy. But it is further urged that the defendant Ayer elected to claim under the assignment of Sands & Co. to Cox, and the argument is strenuously made that he has bound himself to the assignment by filing a proof of claim with the assignee; and it is insisted that under the ruling in Le Marchant v. Moore, 150 N. Y. 218, 44 N. E. 770, the defendant Ayer has precluded himself from looking to anything else than the assigned estate. It was held in that case that where, with full knowledge of all the facts, a person proves and files a claim against an assigned estate for an amount of indebtedness arising out of a broker's unauthorized use of a customer's stock, the customer cannot claim the stock or follow the proceeds in his original right as owner; he elected to treat the stockbroker as his creditor, and has bound himself to the assignment. The facts upon which that particular ruling was made in Le Marchant v. Moore are not fully stated in the report of the case; but an examination of the record shows that the owners of the shares as to which that ruling was made not only filed a claim in insolvency, but were represented in the selection of an assignee, authorized an appearance for them in the proceeding by attorney, and that that attorney signed a receipt in blank for a dividend out of the assigned estate. That case does not hold, and we certainly are not prepared to hold, that the mere fact of the presentation of a naked claim to an assignee, with no further or other proceeding on the part of the claimant, is, under all circumstances, to be construed as binding such claimant to the assignment; but that question does not arise here, for the simple reason that the document which in this action is called a "claim under the assignment" is in no sense under the assignment, but is plainly in antagonism thereto, except as to certain specified shares. Although the paper is entitled, "In the Matter of the Assignment of Sands & Co.," yet its contents disclose that Mr. Ayer was making a claim for his shares of stock in specie, which was simply saying that they were not assets of the assigned estate. The paper also contained the alternative demand that, if his stocks could not be given to Mr. Ayer, then he insisted upon his right to the value thereof preferentially to everybody otherwise entitled to share in the assigned estate, except as to a balance of $1,651 on one particular kind of stock, in respect of which he does say that he is entitled to share with other creditors. The whole value of his stock in the hands of Sands & Co. was $43,376, after making all allowances. We do not think the notice served upon the assignee can in any reasonable or just sense be regarded as binding Mr. Ayer to the assignment, unless it may be to the one item above referred to; and this item is quite distinct from, and in no wise affects, the stock involved in this action.

We are, then, to consider to what extent Mr. Ayer is interested in the fund in suit. His claim to priority stands upon the fact that he was the absolute owner of his stocks, unincumbered by any lien of Sands & Co., who held them merely on deposit for sale, and, until sold, for safe-keeping. At the time of the failure of Sands & Co., the plain-

tiff's stock and the Parrish stock were held as collateral security; the situation being that, when Sands & Co. pledged the shares of these three parties to the National City Bank, they held the Parrish stock and the plaintiff's stock, with a lien of some kind thereon, as pledgees, but the Ayer stock was free. In the marshaling of these claims the equity of Ayer cannot be said to be superior to that of the two other claimants, because it is shown that, upon the failure of Sands & Co., all that was due to that firm from the plaintiff and from Parrish was duly and properly tendered, and neither Sands & Co. nor the assignee was able to deliver either the specific shares, or an equivalent number. Upon the tender and demand and refusal, the right to retain the stock pledged ceased at once, and as to those stocks the plaintiff and Parrish stood in exactly the same relation as Ayer stood to his stock. The plaintiff's stock and the Parrish stock were only collateral security. "A pledgee of stock certificates as collateral security has no more right to retain them after the principal debt is tendered, than a bank has to retain notes offered for discount and refused; or no more than if, upon the stock being offered as collateral security for the payment of principal notes, discount of the notes is refused." Coleb. Collat. Sec. 459. The pledgee's right to these collateral securities being lost, and they being released from the lien of the pledge, the proceeds in the hands of the National City Bank were also released from any claim of Sands & Co. If the stock had been still in the hands of Sands & Co. when the tender and demand were made by the plaintiff and by Parrish, and the refusal was made to accept the tender, the stocks of those two parties would have ranked in the same category as the stock of Ayer; that is to say, Sands & Co. would have had no lien as pledgee on any of the stocks. The question here is not as to an adjustment of indebtedness of either of the parties to Sands & Co. or the assignee. It is as to the right of the parties to certain collateral securities, or their proceeds; and, in ascertaining those rights, the referee was correct in adjudging that the three parties stood in equality of right, and that the fund was distributable among them in the way pointed out in his decision.

The judgment appealed from must be affirmed, without costs to either party. All concur.

