## VAN WOERT v. OLMSTEAD et al.

(Supreme Court, Special Term, New York County. May 25, 1901.)

1. ACCOUNTING—PLEDGE OF STOCK—PLEDGE BY PLEDGEE—SALE—SURPLUS—DIVISION.

Several customers of a brokerage firm deposited certificates of stock with the firm as security for their several indebtedness, and thereafter the brokers commingled the same, and pledged them for their own debt. Subsequently they made a general assignment, and those having the certificates sold them, and, after satisfying the brokers' debt from the proceeds, a surplus remained. *Held*, in a suit for an accounting by one of the customers, that the fund should be divided in the proportion to the interest of each customer after deducting his indebtedness to the brokers.

2. SAME—TENDER.

A tender by any of the customers to the brokers after the pledge by the brokers could not eliminate the lien of the brokers as a factor in the account as against such customer.

3. COSTS.

The costs of the plaintiff should be paid out of the fund, inasmuch as a disproportionate part of the burden of conducting such action falls on plaintiff, while, in a sense, it is for the common advantage of all.

**4. SAME.**

> Those with whom the brokers pledged the stock having been paid
> in full at the expense of the customers, the costs of the former should
> not be payable out of the fund.

Action for an accounting by William Van Woert against George
M. Olmstead and others.   Findings of referee.

Robert M. Boyd, for plaintiff.

White & Otheman (Howard B. White, of counsel), for defendants
Thompson & Mairs.

J. H. Caldwell, for defendant Swann, as assignee.

Arthur H. Bissell, for defendant Weeks.

Sullivan & Cromwell (H. W. Clark, of counsel), for defendant Com-
stock.

Chas. T. Adams, for defendants Franklin & Seamans.

C. L. Harwood, for defendant Pike.

Robert R. Read, for defendants Olmstead & Taylor.

DALLAS FLANNAGAN, Referee.   This is an action for an ac-
counting.   The subject of the action is primarily a fund in the hands
of the defendants Thompson & Mairs, which arose in the following
manner:   The defendants Olmstead & Taylor were stockbrokers, and
the plaintiff and the defendants Pike, Comstock, Franklin & Seamans,
and defendant Weeks' assignor were customers of that firm.   The
plaintiff and these customers had on deposit with Olmstead & Taylor
certain stocks, which Olmstead & Taylor held as collateral security
for various sums due on their several accounts.   Olmstead & Taylor
intermingled these securities, and re-hypothecated the whole with de-
fendants Thompson & Mairs for a larger sum than was due them from
either of their said customers, thus converting the securities.   Doug-
las v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219.   Olmstead &
Taylor thereafter failed, and made a general assignment to defendant
Swann, and Thompson & Mairs then sold all the securities pledged
by Olmstead & Taylor, satisfied Olmstead & Taylor's indebtedness to
them out of the proceeds, and now hold the balance subject to the out-
come of this action.   There is no issue of fact in the case, and the
only question of law is in what manner an equitable distribution of
this fund should be reached.   While the principles are well settled
which entitle the various claimants to follow the proceeds of their
stock into this fund, and which entitle them to a preference with re-
spect thereto as against the general creditors represented by the as-
signee (Sillcocks v. Gallaudet [Sup.] 21 N. Y. Supp. 552; Smith v.
Savin, 141 N. Y. 315, 36 N. E. 338; La Marchant v. Moore, 150 N. Y.
209, 44 N. E. 770; Whitlock v. Bank, 29 Misc. Rep. 84, 60 N. Y. Supp.
611), none of the many counsel engaged have pointed to any author-
ity which states what method should govern the distribution of this
fund, and, so far as I have been able to learn, the question has never
been directly considered by any court of this state.   Two contentions
are urged.   On the one hand, it is said that the fund should be di-
vided in the proportion of the "equities" or margins of the various
parties in their respective stocks; that is to say, in proportion to the
interest of each creditor in his stock after deducting his indebtedness

to Olmstead & Taylor. On the other hand, it is contended that, inasmuch as the title to the whole of his stock remained at all times entirely\in each creditor, the distribution should be made in proportion to the total value of their several holdings without reference to their several indebtedness to Olmstead & Taylor. Where the fund to be distribution is equal to or greater than the aggregate "equities" or margins of the various creditors in their stocks, the two theories will bring about the same result when these two facts are borne in mind: (1) That each creditor must account in this action with the assignee as well as with the other creditors; (2) and that each creditor is entitled to a preference over the assignee as to every part of the fund. The two theories bring about, however, entirely different results where the amount to be distributed is less than the aggregate "equities" or margins of the various creditors, and this is the condition which obtains in the case before me. A simple example will illustrate the operation of the two theories under the condition last mentioned. Let us suppose that the value of the stock of each of two creditors, A. and B., is $1,000, that their respective indebtedness to their broker is $900 and $100, that their stock was repledged by him for $1,800, and that the fund remaining for distribution in the hands of the subpledgee after the satisfaction of his lien is $200. If we distribute this fund on the second theory, A. would get $100 and B. $100. If we suppose the estate in the hands of the assignee to be utterly worthless (as is apparently actually the fact in the case at bar), we find that A. and B., being equally innocent, and who fell into a common misfortune through the same wrong of their common broker, have come out of that misfortune on unequal terms. A. is precisely as well off financially as he would have been had the wrong never been committed, and had the broker remained perfectly solvent. On the other hand, the entire burden and loss is cast upon B. When we consider that their property was intermingled as common surety for the same debt (Smith v. Savin, supra), under identical circumstances, and without the fault of either, this seems a most inequitable outcome. If, now, we turn from this theory, and apply the other theory advanced, we find that by a division under that theory, viz. in proportion to the "equities," A. would receive $20 and B. $180, so that each would have sacrificed in the common misfortune the same percentage (80 per cent.) of what he would have received had that misfortune never occurred.

While a division on the theory of "equities" seems to bring about a fair result, I think the true theory for the equitable solution of the question is found by approaching it from a different standpoint. Before the pledge by Olmstead & Taylor was ever made to Thompson & Mairs (or at least before the stocks of these claimants were intermingled in their final relations under the pledge), these claimants all stood in the same position. The stock of each claimant was subject to a lien in favor of Olmstead & Taylor for the amount of their respective indebtedness to them, and each lien had been placed there by their respective consents. It seems to me the amounts of the liens placed on the securities by the consents of the claimants themselves

cannot be equitably disregarded in the disposition of this case. The amounts placed upon the stocks by the consents of the claimants and the amount placed there without their consents are, in my opinion, the two salient factors in the determination of this matter. Had the stocks been intermingled, and pledged only for the aggregate liens or indebtedness of all these parties, no one of them would, by that act alone, have been substantially injured. It was when an additional lien was placed there over and above the lien to which these parties had consented that the substantial injury was done. The placing of this additional lien was a common and joint misfortune, due to the same error of judgment on the part of all the parties in intrusting to Olmstead & Taylor the possession of all the indicia of title to their respective stocks, and it was the only common misfortune to which their stocks were subjected. The several liens upon the stocks for the amounts of their respective indebtedness did not represent any common misfortune, but represented an incident to their independent individual speculations. If we suppose the stocks to be still in the hands of Thompson & Mairs, and the conditions precisely the same as when the pledge was made to them and the intermingling of the stocks consummated, and that the present purpose is to raise the necessary fund to release the stocks, and that the question is how it should be contributed by the claimants, it seems to me the first step would be to call upon each of the claimants to contribute the amount of the lien which was placed upon his stock with his own consent, and in the pursuit of his own purposes. Whatever incumbrance each claimant individually placed upon his own stock, he ought to stand for individually. The question would then arise how to contribute the amount of the lien which was placed upon the stocks without the consent or fault of any of the claimants, but by the same misfortune common to all. The answer is, it should be contributed in such a manner that each claimant would sacrifice the same percentage of that interest in his stock which was effected by the common wrong; in other words, it should be contributed by each claimant in equal proportion to the interest remaining to him after deducting the amount of the lien created by his individual action. To state the process of raising this fund in the form of an account: Each claimant should first be credited with the value of his stock. There should then be deducted the amount of the lien created by his individual consent. From each balance thus remaining there should then be deducted an equal proportion thereof sufficiently large to make up, with the amounts already deducted, the full amount of the fund necessary to be raised. If this be the equitable manner in which the amount necessary to discharge the lien of Thompson & Mairs should have been contributed under such circumstances, it is the method Thompson & Mairs ought to have followed in satisfying their lien, and it must, in equity, be assumed that they did follow it. The accounts of the claimants should be stated accordingly. It will be observed that this result, as an arithmetical proposition, is the same as a division of the fund remaining in the hands of Thompson & Mairs on the basis of the "equities" of the various claimants, viz. in accordance with the first theory suggested.

It is contended that certain of the claimants made tender of the amounts of their indebtedness to Olmstead & Taylor, and that this alters the case with respect to them; that, as the liens of Olmstead & Taylor, as against their stocks, were discharged by these tenders, the existence of these liens as a factor in the disposition of the case was thereby eliminated. The tender by defendant Comstock is claimed to have been made to Olmstead & Taylor after the pledge by them to Thompson & Mairs, but before the general assignment, while the tender by plaintiff is claimed to have been made after the assignment, and to both Olmstead & Taylor and to their assignee. I assume, without passing upon the questions, that the facts in each instance, as proved by these claimants, show a valid tender. As to any tender which may have been made after the assignment to Olmstead & Taylor and to their assignee, neither Olmstead & Taylor nor the assignee had the legal power to obtain and deliver the stock in compliance with the tender, so that there was no opportunity for or possibility of its acceptance (Chamberlain v. Greenleaf, 4 Abb. N. C. 178), and it was, therefore, of necessity a mere ceremony. I cannot see, however, that a tender at any time after the pledge of the stocks to Thompson & Mairs should affect the result. When the pledge to Thompson & Mairs was made, they thereby acquired a lien on the stocks for more than was due Olmstead & Taylor, and the various claimants involuntarily became co-sureties for the lien created in favor of Thompson & Mairs to the extent of the value of their respective stocks. Notice to Thompson & Mairs of the facts would have immediately imposed upon them the duty to deal with the stocks accordingly. Smith v. Savin, supra, and cases therein cited. If the right existed at that time in favor of each of these co-sureties as against the other and as against Thompson & Mairs to cause Thompson & Mairs to satisfy their lien out of these securities in the manner above indicated (viz. by first deducting the indebtedness to Olmstead & Taylor, and thereafter pro rata to the balance of the value of each claimant's stock remaining), how could those rights be altered, and how could any co-surety's proportion of the burden be equitably increased by a mere tender to Olmstead & Taylor? The method of stating the accounts which I have adopted proceeds on the theory that each claimant first is charged with, or contributes from the proceeds of his stock, the amount of his indebtedness to Olmstead & Taylor, and thus pays this indebtedness. Surely, a mere prior offer to Olmstead & Taylor to pay it ought not to operate either to the advantage or disadvantage of parties other than Olmstead & Taylor, who are involuntarily involved in a common misfortune. It is contended that the case of Rhinelander v. Bank, 36 App. Div. 11, 55 N. Y. Supp. 229, is in conflict with the method of stating the accounts which I have indicated above as the correct one, and that that case is authority for the proposition that the fund should be distributed in proportion to the total value of the stock of each claimant, without any regard to his "equity" therein. I have examined this case, and find that the question as to whether the fund, the subject of that action, should be divided in either of the ways contended for by counsel in this action, viz. in proportion to the "equities" of the parties, or in proportion to

the total value of their respective stocks, was not raised or discussed therein. It is true that, though the fact does not appear from the opinion, the record in that case will show that the fund was actually distributed by the referee who originally heard the case in proportion to the total proceeds of the stocks of the respective claimants without reference to their several indebtedness to the subpledgor. No complaint of this disposition was made, however, before the appellate court, nor was its correctness questioned there, or brought to the court's consideration; and it is clear that no review of the disposition made by the referee in this respect was intended or had. On the other hand, in the case of Whitlock v. Bank, supra, which was disposed of by the court, instead of by a referee, the contrary method was followed, and the fund distributed in proportion to the "equities." In respect to tender, that subject was discussed in the Rhinelander Case in this connection. The stock of one Ayer, being free and clear in the hands of his brokers, was intermingled by them with other stock subject in their hands to liens in their favor, and as thus intermingled the whole was subpledged to a bank. The stocks were subsequently sold by the subpledgee (the bank), bringing an amount in excess of its lien, which surplus was the subject of distribution in the Rhinelander suit. Ayer claimed that, as his stock was free and clear when intermingled and pledged, he was in a position of priority with reference to those claimants whose stock was subject to a lien in favor of the brokers when intermingled, and that he was, therefore, entitled to the whole surplus fund to the exclusion of these claimants. It appeared that the claimants thus sought to be excluded had duly tendered the amount of the lien which was against their stocks when intermingled, and the court held that Ayer was not entitled to any priority. The court did not hold that Ayer would have been entitled to a priority had no tender been made. That question was not raised or considered.

Costs should be awarded to the plaintiff and to defendants Thompson & Mairs, Pike, Comstock, Weeks, and Franklin & Seamans, but, inasmuch as whatever costs are made payable out of the fund must be an additional burden upon parties who have committed no legal wrong, and are already heavy losers, I have concluded that none of the costs should be so payable except the costs of the plaintiff. The costs of the other parties mentioned should be awarded against Olmstead & Taylor. The costs of the plaintiff should be made payable out of the fund, for the reason that a disproportionate part of the burden of conducting such actions as this necessarily falls upon the plaintiff, and it is, in a sense, borne by him for the common advantage. All the loss which has fallen on the various claimants herein has been sustained, so far as their own acts are concerned, because they committed the error of dealing (in the usual way) with Olmstead & Taylor. As Thompson & Mairs dealt with them also, and have, notwithstanding, been paid in full at the expense of these claimants, I do not think any further penalty should be placed upon the latter for the benefit of the former, and the costs of Thompson & Mairs should, therefore, not be payable out of the fund.