(72 App. Div. 30.)

MOULD v. IMPORTERS' & TRADERS' NAT. BANK OF CITY OF
NEW YORK et al.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. PLEDGE OF STOCK—REHYPOTHECATION—RECOVERY—FOLLOWING COLLATERALS—EVIDENCE.

In an action against a bank to recover stock, or the proceeds thereof, claimed to have been pledged by plaintiff with brokers, and in turn pledged by them with defendants, it was shown that the brokers had had three certificates of the stock, each for 100 shares, one belonging to plaintiff and the other two to G.; that they had pledged a certificate for 100 shares with the bank, the certificate not bearing the same number as plaintiff's, but that it was the brokers' custom, when stock was pledged with them, to surrender it, and take a new certificate. It was shown that a member of the brokers' firm had stated before the action that he had traced plaintiff's stock to the bank, and G. stated in court that he made no claim to the certificate. Held error to dismiss the complaint on the theory that plaintiff had not traced his stock into the hands of the bank.

2. BANKRUPTCY OF PLEDGEE—CLAIM—PRESENTATION TO TRUSTEE—ACTION AGAINST HOLDER.

That one having a claim against insolvent brokers for stock pledged with them presents his claim to the trustee in bankruptcy does not preclude him from suing to recover the stock or its proceeds from a bank with which the insolvents had pledged it.

Ingraham, J., dissenting.

Appeal from trial term.

Action by Thomas Mould against the Importers' & Traders' National Bank of the City of New York and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH. McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles De Hart Brower, for appellant.
Felix Jellenik, for respondent Moeller.
Avery F. Cushman, for respondent Leonard, Jr.

McLAUGHLIN, J. This action was brought to recover certain stock, or the proceeds thereof, alleged to have been deposited by the plaintiff with Hatch & Foote, stockbrokers, as collateral security for the payment of money advanced in the purchase of stocks, and in turn deposited by that firm with the defendant bank as collateral security for a loan. The complaint was dismissed, the trial court finding as a fact that the plaintiff had failed to show that the certificate of stock held by the bank belonged to him, and from the judgment entered upon this decision the plaintiff has appealed.

It appeared upon the trial, and such facts were uncontradicted, that the firm of Hatch & Foote, stockbrokers, on the 6th of April, 1900, held a certificate (No. 18,821) for 100 shares of the preferred stock of the Union Pacific Railroad Company as collateral security for the payment of money advanced by it to purchase for the plaintiff 100 shares of stock of the American Ice Company, which was subsequently sold at a loss to the plaintiff (after crediting a dividend received thereon) of $704; that the certificate, at the time the plaintiff

delivered it to Hatch & Foote, stood in the name of Blake Bros., but was indorsed in blank; that, according to the custom pursued by the firm of Hatch & Foote, whenever stock was deposited with it as collateral the certificate was surrendered, and a new one issued in the name of the firm; that on the 10th of August following Hatch & Foote borrowed from the defendant bank $25,000, and among the collaterals deposited with the bank for the payment of the loan was a certificate of 100 shares of the preferred stock of the Union Pacific Railroad Company, but of a different number from the one which the plaintiff delivered to Hatch & Foote; that shortly after this loan Hatch & Foote became insolvent, made a general assignment for the benefit of creditors, and subsequently were adjudged bankrupts, the defendant Leonard being appointed trustee in such proceeding. It was further made to appear that at the time of such failure Hatch & Foote held three certificates of 100 shares each of the preferred stock of the Union Pacific Railroad Company, and which they had pledged at different places as collateral security for loans, one of which was conceded belonged to the plaintiff, one to the defendant Robert J. McGay, and the other to the defendant Frank B. McGay; that the senior member of the firm of Hatch & Foote at or immediately prior to the commencement of this action stated, according to the testimony of the plaintiff, that he had traced the plaintiff's stock to, and the same was then held by, the defendant bank; and at the trial the counsel for the McGays stated in open court that his clients had no interest in and made no claim to the certificate held by the defendant bank. The foregoing facts not being contradicted, we are of the opinion that the finding made by the trial court to the effect that the plaintiff had not established that the certificate of stock held by the defendant bank belonged to him was contrary to and against the weight of evidence. We have not only the testimony of the plaintiff, which is not contradicted or questioned in any way, to the effect that the senior member of the firm of Hatch & Foote stated that he had traced the plaintiff's stock to and the same was held by the defendant bank, but we also have, in addition thereto, the concession made by the McGays that they did not claim such certificate. As already said, the firm of Hatch & Foote only held three certificates at the time of their failure, one of which belonged to the plaintiff, and the other two to the McGays; and, if the McGays had no interest in this certificate, then it certainly must belong to the plaintiff. That the number of the certificate held by the bank does not correspond to the one left by plaintiff with Hatch & Foote is of no importance in view of the custom pursued by that firm in having stock put up as collateral transferred. Nor does the fact that the plaintiff presented his claim to the trustee in bankruptcy prevent the prosecution of this action to recover the stock or its proceeds. Rhinelander v. Bank, 36 App. Div. 11, 55 N. Y. Supp. 229. This action was instituted, so far as appears, prior to the filing of such claim, and, if it were not, it would not, in our opinion, make any difference, because the bringing of the action is sufficient evidence of an election upon the part of the plaintiff to pursue this remedy, and recover the stock or its proceeds, instead of relinquishing whatever right he might have in this respect,

and take in place thereof whatever dividend might be made to him, as general creditor, in the bankruptcy proceeding. It may be that, if a dividend be declared in that proceeding, the fact that the plaintiff had brought this action might there be urged as a bar to his right to participate therein until after the settlement and determination of this action, but that question is not before us for consideration. On the whole case, therefore, we are of the opinion that justice requires there shall be a new trial.

The judgment appealed from is reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I do not concur in the reversal of this judgment, as I do not think that the evidence required a finding that the stock of the Union Pacific Railroad Company which was held as collateral security by the Importers' & Traders' Bank was the plaintiff's stock. The question presented is between the plaintiff and the trustee in bankruptcy of Hatch & Foote as to who was entitled to this stock. Neither of the other defendants had any interest in the determination of that question. To entitle the plaintiff to succeed upon this issue as against the trustee in bankruptcy, he must prove by evidence competent as against the trustee that the stock held by the defendant bank was his stock. I do not think that the declaration of one of the bankrupts, made after the adjudication and after the title to the bankrupts' estate had vested in the trustee, was competent evidence as against the trustee. The bankrupts being parties to the action, their declarations might have been competent evidence as against them, and so admissible; but when the question came to be determined as to whether or not this stock was the plaintiff's, as against the trustee, the court was not justified in accepting the declarations of the bankrupts, after the adjudication in bankruptcy, to prove the fact as against the trustee; and so the statement of counsel for the McGays that they claimed no interest in the stock would have, as I look at it, no possible bearing upon the question whether the plaintiff had proved, as against the trustee in bankruptcy, that the stock in question was the plaintiff's stock. This stock stood in the name of the bankrupts, upon its face was the property of the bankrupts, and the title to it passed to their trustees in bankruptcy. The trustees represented the creditors of the bankrupt, and were entitled to all of the bankrupts' property for distribution among them. If, as the plaintiff claims, this 100 shares of the stock held by the defendant bank was his identical stock, he could have had no difficulty in proving that fact by showing that the 100 shares of stock that he had delivered to the bankrupts had been transferred upon the books of the company to the bankrupts, and was represented by the particular certificate of stock that was held by the bank. It may be true that he had delivered 100 shares of stock to the bankrupts, and the bankrupts had deposited 100 shares of the stock with the bank; but, as it was also proved that the bankrupts held other shares of the stock, I think there was no competent evidence to prove that this stock in question was plaintiff's stock, and for that reason the court below

was right in refusing to award him the stock.   But, assuming that there was some evidence of that fact, still a question of fact was presented for the trial court to determine, and it certainly cannot be said that this unsworn declaration of one of the bankrupts, after he had lost all interest in the question, was sufficient to compel the court to find as a fact that this stock belonged to the plaintiff.   The court, having the question before it, has decided that the evidence was not sufficient to sustain a finding of the plaintiff's ownership of the stock, and I agree with the court below that the evidence was not sufficient. Certainly it was not so clear and convincing as to justify us in reversing the finding as against the weight of evidence.