(91 App. Div. 274.)

TOMPKINS v. MORTON TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. APPEAL—REFEREE'S JUDGMENT—ABSENCE OF CASE—PRESUMPTION AS TO SUFFICIENCY OF EVIDENCE.

Code Civ. Proc. § 1022, authorizes a referee to file a decision concisely stating the grounds on which the issues have been decided, which shall form part of the judgment roll, and provides that the defeated party may except thereto, when, on appeal, on a case containing exceptions, the Supreme Court shall review all questions of law and fact, etc. Held, that it would be presumed on appeal from a judgment entered on a decision not falling within this provision, and in the absence of a case, that there was sufficient evidence to support the findings made by the referee, or which were necessary to support the judgment.

2. SAME—QUESTION FOR REVIEW.

On an appeal from the judgment of a referee entered on a decision not falling within Code Civ. Proc. § 1022, authorizing a short decision by a referee, on appeal from which, on a case containing exceptions, all questions of law and fact are to be reviewed, the question presented, in the absence of a case-made, is whether the facts found justify the conclusions of law on which the judgment was directed.

3. STOCKBROKERS—PLEDGE OF CLIENTS' STOCK—CONVERSION OF STOCK—EQUITIES.

Where stockbrokers pledge as collateral stock held for clients on margins, and which they have, therefore, the right to hypothecate, and also pledge stock indorsed in blank, and intrusted to them for safe-keeping, merely, and the pledgee, on receiving notice from the owners of this deposited stock, sells the margined stock, thereby realizing enough to satisfy his claim, the owners thereof, on the stockbrokers' insolvency, have no claim for contribution against the owner of the deposited stock, who may recover its full value from the pledgee.

4. SAME.

The fact that the stockbrokers borrowed more on the margined stock than its owners owed them to redeem it would not affect the case.

**5. Pledges—Conversion of Stock by Pledgee's Hypothecation—Equities of Owners.**

> A pledgee, holding certain stock indorsed in blank as collateral for a loan, and certain other stock, similarly indorsed, as a depositary, for safekeeping, wrongfully pledged it all on his own account. The owner of the stock held as collateral did not redeem it from the original pledgee, or make any attempt to reclaim it until after its sale by the last pledgee, though the owner of the deposited stock prevented a sale of that by timely notice to the last pledgee. *Held*, that the owner of the collateral stock could not claim contribution from the owner of the deposited stock.

Appeal from Judgment on Report of Referee.

Action by Hamilton B. Tompkins against the Morton Trust Company, Thomas Hastings, and others. From a judgment for plaintiff and the other defendants, except the trust company, entered on the report of a referee, defendant Hastings appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Alfred Ely, for appellant.
Frederick H. Man, for respondents.
Isabella M. Pettus, for respondents Kelly and Cronin.
Felix Jellenik, for respondent Moeller.
Walter P. Taylor, for respondent Kingsley.

INGRAHAM, J. The action was referred to a referee to hear and determine. His report states certain facts, upon which the referee based his conclusions of law, and from the judgment entered thereon the defendant Hastings appeals. The facts found, and upon which this judgment was entered, are as follows:

The defendants Daniel B. Hatch and Charles B. Foote, deceased, were prior to September 18, 1900, partners engaged in the business of stockbrokers in the city of New York. On September 18, 1900, the members of the firm executed a general assignment to the defendant Anderson for the benefit of creditors. Prior to such assignment, Hatch & Foote had obtained from the defendant the Morton Trust Company certain loans, upon which were due on the 18th day of September, 1900, $180,000, exclusive of interest, and had pledged as collateral security for these loans various securities, consisting of bonds and stocks of corporations; the bonds being payable to holder or bearer, in the usual form of corporate bonds, and the stocks being represented by stock certificates, with assignments in blank thereon, executed by the persons therein stated to be the owners of the stock. Such pledge by Hatch & Foote was without the knowledge or consent of the owners of the stock, but the said Morton Trust Company, in accepting the securities as collateral for said loans, and in making said loans, relied in good faith upon Hatch & Foote's apparent title thereto.

Upon the failure of Hatch & Foote, on or about the 18th day of September, 1900, the Morton Trust Company duly demanded payment of the several loans due them as aforesaid, and thereafter, and prior to September 27, 1900, sold sufficient of the collateral securities held by it to repay the loans. After such sale and the payment of the loans, there remained in its hands the sum of $3,895.07 in cash, and 50 shares of Standard Oil stock. The last of the loans made by the

Morton Trust Company to Hatch & Foote were made on August 29, 1900, for $40,000. Some time prior to August 29, 1900, the firm of Hatch & Foote had pledged all of the stocks, bonds, and other securities which they were then carrying for, or held in their possession as collateral for the account of, the several parties to the action, defendants and plaintiff (other than the stocks and securities deposited with the Morton Trust Company, the security for the loan of $40,000), as security for various loans theretofore made to said firm at various times by banks and trust companies, individuals, partnerships, and corporations, and in each case the amount of the loan exceeded the total due to Hatch & Foote from any of the parties to this action. On August 29, 1900, when the loan of that date was made to the said firm by the Morton Trust Company, and also on September 18, 1900, when the said firm made an assignment, as aforesaid, for the benefit of its creditors, all of said loans were outstanding, and said stocks and securities were still held as security therefor. On September 18, 1900, the date of the failure of Hatch & Foote, substantially all of the stocks, bonds, and other securities then owned by the said firm, or which they should have had in their possession for the account of any of their customers, parties to this action or otherwise, had been either pledged or used by said firm as security for money borrowed by it, or had been sold or otherwise disposed of by said firm; and none of such stocks, bonds, or securities had been redeemed or reacquired by said firm, or were in its possession. After September 18, 1900, the plaintiff and the defendants, who were indebted to Hatch & Foote, duly tendered to Hatch & Foote and to said Anderson, their assignee, the amount of their respective indebtedness to Hatch & Foote, and demanded the return of all the securities which Hatch & Foote held for them or were carrying for their account, which tenders were refused, and which demands were not complied with. The plaintiff and the defendants, other than the defendants Hastings and Meeker, had, during the continuance of such copartnership of Hatch & Foote, purchased through them, as brokers, certain stocks and other securities upon margin, which securities said Hatch & Foote were carrying for such customers at the time of their failure. The defendant Meeker had become indebted to the firm of Hatch & Foote, which indebtedness was secured by the pledge with said firm of certain stocks and securities.

The referee then finds the specific securities held by Hatch & Foote at the time of such failure for each of the respondents, and the amounts due by each, for which Hatch & Foote held such securities, and the specific securities thus held that had been deposited with the Morton Trust Company as security for the loans above mentioned.

The referee further found that the defendant Thomas Hastings had some time in the month of August, 1899, deposited with Hatch & Foote, for safe-keeping, a certificate for 50 shares of the capital stock of the Standard Oil Company; that said stock stood in the name of the said Hastings, and upon the certificate there was an assignment in blank, dated August 14, 1899, signed by Hastings, which stock was of the value of $26,500 on the 18th day of September, 1900, and was deposited by Hatch & Foote with the Morton Trust Company as security for the loans made by it to Hatch & Foote, before

mentioned; that Hastings notified the Morton Trust Company that the said stock was his individual property, and demanded the delivery of such stock to him; and that such stock was not sold by the Morton Trust Company, they having realized from the other securities deposited with them by Hatch & Foote an amount sufficient to repay the loans made to Hatch & Foote.

Upon this decision there was entered a judgment which, in effect, held that Hastings' stock should be sold, and the proceeds added to the amount in the hands of the Morton Trust Company, and should be divided among the plaintiff and the several defendants whose securities had been used to realize sufficient to repay the loans made by the Morton Trust Company to Hatch & Foote. On this appeal no case or bill of exceptions was made, but the defendant Hastings appeals from the judgment entered upon this report of the referee, and bases his objection to this report upon his contention that, upon the facts found by the referee as to the ownership of this stock deposited by him for safe-keeping with Hatch & Foote, he is entitled to it absolutely, and that it is not subject to contribution, or to any claim or interest that either the plaintiff or the other defendants have as against Hatch & Foote and the Morton Trust Company. The report or decision of the referee is not a short decision, as authorized by section 1022 of the Code of Civil Procedure, as it existed prior to September 1, 1903. It does not state the facts found separately from the conclusions of law based thereon, but it finds certain facts, and from those facts deduces certain legal conclusions, upon which is based the judgment directed.

The facts upon which the judgment is based are specifically found by the referee, and while, in the absence of a case, it undoubtedly will be assumed that the facts found by the referee were sustained by the evidence, and that there was also evidence to justify a finding of any other fact at issue necessary to sustain the judgment, upon an appeal from a judgment entered upon a referee's report, when no case is made, the question presented is whether, upon the facts found by the referee in his decision, the conclusions of law upon which the judgment was directed were justified. It must be assumed, therefore, that the securities deposited by Hatch & Foote with the Morton Trust Company as security for the loans belonged to their customers, and that, with the exception of the shares of stock, the property of the appellant Hastings, Hatch & Foote held these stocks and securities as collateral security for advances or loans made by Hatch & Foote to the several defendants named. The stock of Hastings, now in the possession of the Morton Trust Company, was deposited with Hatch & Foote for safe-keeping. Hastings owed them no money, and their use of this stock as collateral security for a loan was a larceny of the stock. No title to this stock, as against Hastings, could be acquired by any one, except a person who had in good faith purchased the stock, or loaned money upon it, relying upon the apparent title that Hastings had conferred upon Hatch & Foote. The ground upon which the right of a person rests, who in good faith has purchased stock from a bailee, or had acquired a right to hold the stock as security for a loan, is stated in McNeil v. Tenth Nat. Bk., 46 N. Y. 325,

7 Am. Rep. 341. In that case the plaintiff, the owner of certain shares of stock, left them with a firm of brokers to secure any balance which might become due to the brokers from the plaintiff. ·The certificate of this stock had indorsed upon it a blank assignment and power of attorney to transfer it assigned by the plaintiff. These brokers pledged these securities to the defendant, but without authority from the plaintiff, and without his knowledge. The defendant, however, at the time of receiving the shares, had acted in good faith, and had no knowledge of the plaintiff's interest, whereupon the plaintiff commenced an action to recover from the defendant the stock so pledged. Judge Rapallo, delivering the opinion of the Court of Appeals, says:

"It must be conceded that, as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. * * * It does not interfere with the well-established principle that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

And after discussing the form of the transfer, it is said:

"Such, then, being the nature and effect of the documents with which the plaintiff intrusted his brokers, what position does he occupy toward persons who, in reliance upon those documents, have in good faith advanced money to the brokers or their assigns on a pledge of the shares?"

And the court answers that question, after an examination of the authorities, as follows:

"My conclusion is that the Tenth National Bank must, on the facts found, be deemed to have advanced bona fide on the credit of the shares, and of the assignment and power executed by the plaintiff, and is entitled to hold the stock for the full amount so advanced, and remaining unpaid, after exhausting the other securities received for the same advance."

This is a right which accrues to the pledgee by estoppel. As to all the world, except the pledgee, who has actually and in good faith advanced money upon the apparent title conferred by the owner of the shares upon his bailee or agent, the owner is entitled to the stock. Hastings is entitled to this stock as against Hatch & Foote. He is entitled to this stock as against the respondents, who have parted with no property or money based upon the apparent title which Hatch & Foote had; and, unless there is some principle upon which these defendants can insist that this estoppel which existed in favor of the Morton Trust Company can be enforced for their benefit, certainly Hastings was entitled to these shares of stock, which Hatch & Foote had simply appropriated for their own use, without right or authority. The loan to the Morton Trust Company has been repaid. That is alleged, and not disputed. It is in no position to assert any interest in this stock as against Hastings. That loan was paid by the sale of securities pledged to secure it, in which the plaintiff and the individual

defendants, other than Hastings, had an interest; and I can see no ground upon which this gives to these defendants any right to appropriate Hastings' stock, unless it be upon some equitable subrogation, by which the respondents are subrogated to the right of the Morton Trust Company to hold Hastings' stock because the proceeds of their securities have been applied to the payment of the indebtedness to secure which the Morton Trust Company was entitled to hold Hastings' stock, as well as the other securities pledged by Hatch & Foote. To determine that question, it is necessary to consider the relation in which Hatch & Foote stood to the respondents as to the securities that the firm held. As I understand it, the respondents, with the exception of Meeker, had purchased through Hatch & Foote certain securities upon margin, and, at the time of their failure, Hatch & Foote were carrying these securities for their customers; the amount of the indebtedness owing to Hatch & Foote being the amount that Hatch & Foote had expended in the purchase of the securities, less the amount that their customers had deposited as margin upon the transaction. While technically the stock purchased under such an arrangement belongs to the customer, and the broker has only a right, as bailee, to hold it as security for the repayment of the balance due, there exist, in consequence of the implied contract between the customer and his broker, certain rights that the broker has, by which the title of the customer is qualified. Thus a customer is not entitled to the identical shares purchased by the broker for his account. The broker has the right to hypothecate the shares to raise money to carry out his contract of purchase which he has made on behalf of the customer, and thus a hypothecation of the stock by a broker to procure the money necessary to carry out his contract with his customer, by which he agreed to purchase and carry the stock, is not a conversion of the stock. In Douglas v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219, in speaking of the title of a customer to stock purchased by his broker, to be carried for him on margin, this court said:

"The defendant had the ownership of the securities, but not the right of possession. His interest in the property consisted in his right of redemption. By payment or tender of the indebtedness, the lien of the plaintiffs would have been discharged, and the defendant would have become entitled to the immediate restoration of his property. The plaintiffs might take title to the securities in their own name, and were not bound to retain or deliver the identical securities purchased for the defendant. Their duty was to keep on hand, or under their control, either the securities of the defendant, or a like kind and amount of securities, and to have them in such situation that the defendant, by paying the amount due by him thereon, could at any time obtain them."

In Capron v. Thompson, 86 N. Y. 418, the defendant, a customer of the plaintiffs, who were stockbrokers, stood in somewhat the same relation to their brokers as the respondents stood to Hatch & Foote. There the plaintiffs were carrying stocks for the defendant upon margin, and had hypothecated the stocks as security for loans made by the plaintiffs generally; but it was held that a violation of the agreement under which the transaction between the broker and his customer was carried out was a condition subsequent, which was to be compensated by damages against the stockbroker, and not a condition precedent, which would prevent the stockbroker from charging to his cus-

tomer the amount of money that he had paid on the purchase of the stock on account of his customer. The respondents were not entitled to their securities until they had tendered the amount due to Hatch & Foote. As was said by Church, C. J., in Gruman v. Smith, 81 N. Y. 25, the relation of the parties was that of pledgor and pledgee; and, "for a conversion of the pledge, the pledgee was liable for the damages sustained by the defendant, but whether they would equal the amount of the claim would depend upon the facts developed." Hatch & Foote had, however, acquired no interest in the Hastings stock. They had no right to use it, hypothecate it, or part with its possession. Its use of the stock was a simple larceny. Hastings, however, could elect whether to hold Hatch & Foote for its conversion, or to replevin the stock wherever he found it, and this latter course he adopted. He demanded it of the trust company, and the trust company, recognizing his right, sold the other securities, and realized from their sale an amount sufficient to repay the loan to Hatch & Foote. To that stock Hastings was then entitled, as against both Hatch & Foote, the Morton Trust Company, and all the world. No lien existed which entitled any one to appropriate this stock and sell it, and certainly, if Hastings had brought an action of replevin to recover possession of this stock after this sale, there is no right of possession in any one that could have been an answer to such a demand.

These respondents, however, insist that they have acquired some right to have Hastings' stock applied to redeem pro tanto their stock deposited by Hatch & Foote with the Morton Trust Company, by reason of the finding of the referee—

"That some time prior to August 29, 1900, the firm of Hatch & Foote had pledged, together with other collaterals, all the stocks, bonds, and other securities which they were then carrying for, or held in their possession as collateral for the account of, the several parties to this action, defendants and plaintiff, other than the stocks and securities deposited with the Morton Trust Company for the loans aforesaid made by it, as part collateral for various loans theretofore made to said firm at various times by banks and trust companies, individuals, partnerships, and corporations, and in each case the aggregate amount of the loan exceeded the total value of all securities in said loan belonging to, or claimed by, any of the parties to this action; and on August 29, 1900, when the loan of said date to said firm was made by the Morton Trust Company, and also on September 18, 1900, when said firm made an assignment as aforesaid for the benefit of its creditors, all of said loans were outstanding, and said stocks and securities were still held as collateral therefor."

And they contend that when, by these pledges or hypothecations, the amount that Hatch & Foote had advanced to purchase property held by the plaintiff and various defendants had been obtained by them, the right of the broker to hold the additional securities was at an end, and the various parties to the action had the right to demand the delivery of the securities free from pledge. I do not see how this could affect the question as to Hastings' right to the stock belonging to him when he found it in the possession of the Morton Trust Company. But it is quite clear that the fact that the brokers had secured sufficient money to carry these respondents' stocks would not, of itself, have entitled the respondents to a delivery of the stocks held by the brokers as security for the moneys advanced by them on account

of the customers.  The only way that these pledgees could obtain possession of the stock pledged was by payment to the broker of the amount due.   The broker was responsible to repay to the lenders the amount that he had borrowed, and the fact that others were willing to loan them a greater amount upon the stock than the brokers had loaned to their customers, relying upon the responsibility of the brokers to repay the loan, would not in any way discharge the indebtedness of the customer to the brokers, or entitle them to any part of the collateral pledged without repayment of the amount advanced by the broker for the account of the customer.  It seems to me that when Hastings demanded his stock he was entitled to it, and neither the rights of Hatch & Foote, nor their customers, would have been a defense to his action to recover it.

There is a distinction between the relations that existed between Hatch & Foote and the defendant Meeker and their other customers. The referee found that the defendant Meeker had borrowed from Hatch & Foote the sum of $28,000.  As collateral security for this loan, she had deposited with Hatch & Foote certain securities, of the aggregate value of $41,426.75, and this loan was outstanding and unpaid at the time of the failure of Hatch & Foote.  Undoubtedly the pledge of stock so deposited as security for this loan was a conversion of the stock by Hatch & Foote, and entitled the defendant Meeker either to treat the pledge as a conversion, and sue Hatch & Foote for the damages sustained thereby, or to tender the amount due by her to Hatch & Foote, and take proceedings to obtain possession of the stock.   It is not alleged that she took either course prior to the time that Hastings demanded his stock from the trust company, or prior to the time that the trust company sold Meeker's stock to realize sufficient to repay its loan to Hatch & Foote.   The referee had treated this claim of Meeker the same as that of the other respondents, who were customers of Hatch & Foote, for whom Hatch & Foote were carrying stocks on margin, and she has not appealed from that judgment.   I cannot discover, however, that this fact would affect Hastings' right to his stock.   Hatch & Foote, or the trust company, as its pledgee, were entitled to hold the Meeker stock until Meeker had tendered the amount due and demanded the stock.   No such tender was made prior to the sale of the Meeker stock by the trust company; and, whatever right Meeker acquired, either against Hatch & Foote or the trust company, she could acquire no right to have Hastings' stock sold, and its proceeds applied for her benefit.   Assuming that there was a conversion by Hatch & Foote of the stock of either of these respondents by pledging it to the Morton Trust Company, I do not think, as between these respondents and Hastings, they acquired any right to have his stock applied to the payment of that loan, or to contribute pro tanto to discharge the stocks of the respondents from the lien created by the pledge.   In either case Hatch & Foote had the right to the possession of the stock until the loans were paid.   By the transfer of the stock that right of possession was transferred to the Morton Trust Company.   It is true, the respondents could have treated this unauthorized use of their stocks as a conversion, and sued Hatch & Foote for the amount due; but

upon such an election the title to the stock would have vested absolutely in Hatch & Foote, and the respondents' rights would have been their demand against Hatch & Foote for the value of the stock, less the amount due to Hatch & Foote on account of the loans or advances made, or they could have tendered to Hatch & Foote the amount due, and then would have been entitled to receive the securities that Hatch & Foote held as security, and could have followed them in the hands of the Morton Trust Company, or any one else, except so far as the trust company had acquired a valid lien as a bona fide pledgee. Neither Hatch & Foote nor the Morton Trust Company were entitled to hold Hastings' stock for any obligation existing between Hastings and Hatch & Foote. Hastings was entitled to its possession at any time, without any condition whatever, unless the trust company had obtained by way of estoppel some right to hold it as security for the loan. When the trust company voluntarily disposed of other stock that it held as security, leaving the stock of Hastings free of any lien, certainly Hastings' right to his stock was then superior to that of any one; the only one having a right to hold it as against him having lost that right by the repayment of the loan that it had made to Hatch & Foote.

The learned counsel for the respondents cite three cases as justifying this judgment. The first is Gould v. Farmers' Loan & Trust Co., 23 Hun, 322. In that case the plaintiff had pledged to Bonner & Co. certain securities for a loan of $15,000. Bonner & Co., without authority, had pledged these securities to the defendant for $35,000. It was held that the interest of Bonner & Co. in the bonds and stock was the amount of the $15,000 loan, and such interest as might accrue thereon; that, to that extent, they could transfer the pledge to the appellants without any question of right or power, but that, when the appellants came to claim a greater interest than that, it was necessary that they should be able to show actual advances of a valuable consideration, made in good faith; that, for a loan of $35,000, the appellants held, in addition to the stocks and bonds in question, other securities of Bonner & Co., which, it appeared, produced enough, with the amount realized by the plaintiffs' securities, to repay the full amount of the $35,000 loan, leaving a surplus in their hands; and the question was, to whom belonged that surplus? The appellants claimed that it belonged to them, to apply upon another loan made to Bonner & Co.; but this was disallowed, because they were only bona fide holders to the amount of the loan that they had made upon these particular securities. It is clear that this case has no application. The second case is Rhinelander v. Nat. City Bank, 36 App. Div. 11, 55 N. Y. Supp. 229. That case relates solely to the ownership of a surplus in the hands of the bank after it had realized the amount of the loan. No question of subrogation was there discussed, and no question was presented as to the right to take the stock of one person, and apply it to the redemption of a pledge wrongfully made of property of another. The third case is Whitlock v. Seaboard Nat. Bank, 29 Misc. Rep. 84, 60 N. Y. Supp. 611. That was a Special Term case, and would be an authority if all of the pledgors stood upon an equality; all being owners of stock upon which the

broker had made advances, and which he had pledged in violation of his obligation to his customers. No authority is cited, however, in the opinion; and I am not disposed to follow that case to the extent of holding that property which has been stolen from its real owner, when found in the possession of the assignee of the thief, can, as against the real owner, be sold, and its proceeds distributed among others, upon any principle of equitable subrogation.

I think, therefore, that the judgment should be reversed, and, as the facts are not disputed, judgment should be entered dismissing the complaint as to Hastings, with costs, and directing the distribution of the balance in the hands of the Morton Trust Company in accordance with the proportions found by the referee; none of the other parties to the action having appealed from the judgment. All concur.