admits the making and delivery of the note, he says he did so relying upon the statement that he was not to be "troubled" about it, and that its purpose was merely to close up the books of the Goodsell Company in reference to the transactions with the Sicily firm. This is denied. The Goodsell Company say that, although the word "troubled" may have been used, what they meant by "troubled" was that the defendant was not to be pressed for immediate payment, and that, as consideration for his giving the note, they would wait a reasonable time for payment, and would give a new credit to the new firm into which the defendant had entered. The question of whether the defendant was originally liable to the Goodsell Company, or whether he was merely the agent of the Sicily firm, was submitted to the jury as one of fact, as was also the question of whether he was induced to make the note upon the assurance that he would not be compelled or called upon to meet it. One of the witnesses for the plaintiff testified that at the time the note was given he questioned the defendant about the probable profits of the new firm, and, when informed of the amount, he expressed a willingness to apply a portion of such profits on the note. After this evidence was given, a motion was made to amend the answer by setting forth that the agreement was that the note was to be paid out of the profits of the new business, and that, as there were no profits, the plaintiff could not recover. We think that the denial of the motion to amend, based upon such testimony, was proper, for the reason that it was made too late, was entirely inconsistent with the one pleaded in the answer, and at best was not a defense; the witness testifying merely that the Goodsell Company were willing to apply the profits of the new business on the note, which is quite a different thing from the amendment, sought to be introduced, of no profits, no pay.

Judgment is affirmed, with costs.  All concur.

---

(29 Misc. Rep. 84.)

### WHITLOCK v. SEABOARD NAT. BANK et al.

(Supreme Court, Special Term, New York County. September, 1899.)

1. PLEDGES—BROKERS—PLEDGEE'S RIGHTS.

Where a stockbroker holding stock as marginal security pledged it for his own debt, without the knowledge of his pledgors, and was unable to redeem such stock, or return it to them, the broker's pledgee obtained a good title to the stock, and was entitled to hold the same as against the owners, though such transactions amounted to a conversion by the broker.

2. SAME—CONTRIBUTION.

Where a stockbroker, without the knowledge of various customers who had left stock with him as margins, pledged such stock for his own debt, and on his failure his pledgee sold part of the stock to pay the broker's debt, the securities remaining after such debt was satisfied were impressed with a trust for the benefit of all the owners of stock so pledged, who were entitled to participate therein on the ratio of the relative loss of each.

Action by Edward Whitlock against the Seaboard National Bank and others for the conversion of stock. Judgment for plaintiff.

Dallas Flannagan, for plaintiff.

Parker & Aaron, for defendant Seaboard Nat. Bank.

Weeks & Battle (H. Snowden Marshall, of counsel), for defendant O'Brien.

Adolph Cohen, for defendant Wolff.

R. H. Landale, for defendants Warren & Walker.

Taylor & Seymour (O. S. Seymour and W. A. Robbins, of counsel), for defendant receiver.

Stanton & Hopkins, for defendant Ball, assignee.

H. C. White, for defendant Cuthbert.

RUSSELL, J. A stockbroker, holding marginal collateral, may pledge the same up to the amount of the indebtedness owing him as an incident to his right of assignment. His pledgee, for value, takes unassailable title, even beyond that amount, if the transfer of the certificate to him by the original owner appears to be absolute; and the broker is guilty of conversion if he cannot return the stock originally pledged, or similar certificates, upon payment by the original debtor of the amount owing on his stock transactions. Douglas v. Carpenter, 17 App. Div. 330, 45 N. Y. Supp. 219; Lawrence v. Maxwell, 53 N. Y. 19; Smith v. Savin, 141 N. Y. 315, 36 N. E. 338. Edward B. Cuthbert did a stock business in New York City under the name of E. B. Cuthbert & Co. He failed in August, 1897, having pledged to the Seaboard National Bank certain stocks of the plaintiff and various of the defendants, as collateral to loans made on five notes, and for any other indebtedness due or to become due to the bank. He made an assignment to the defendant Ball, which was afterwards set aside, and the defendant Lees was made receiver. The bank sold all the collateral except two certificates of stock and one bond, more than satisfying the balance owing it. The two certificates of stock have been sold by consent of the parties, and the proceeds deposited with the bank to await the issue of this action, which is to determine the rights of the several parties. The bond remains yet to be disposed of. The pledge of the securities to the bank by Cuthbert was without knowledge of the owners, and apparently, as to most of the parties, without regard to sums owing Cuthbert by them. From the time of pledging, Cuthbert was unable to redeem, and could not respond to the owners for the property left with him. The Seaboard Bank obtained good title by the blanket transfer to hold the securities as collateral for the particular indebtedness for which the securities were pledged, and for any balance on general indebtedness owing the bank by Cuthbert. The stocks of all the parties were mingled by Cuthbert in pledging to the bank in one common pool, and, as there is no right of recovery against the bank by the owners, the question arises as to whether any separation can be made in the adjustment of the legal rights of the several owners to the proceeds remaining.

As these several owners, though dealing with Cuthbert separately, became involuntarily involved in common in the payment of his indebtedness to the bank by the burden laid upon their several securities for one common debt, their separate relations, as against Cuth-

bert, became changed into a common co-suretyship for him with the bank to the extent, relatively, that their property was forced to pay his obligations. What, then, are the several rights of those entitled to the balance left? As against Cuthbert, and the bank itself, when satisfied, each owner has the right to follow his property, and appropriate any specific items left on hand as his own, and, if converted into money, has the right to the proceeds of that property. As to his co-sufferers, however, a different rule prevails. Equitable considerations govern the relations of sureties towards their co-sureties, as well as towards the principal debtor and creditor. The securities here first sold were the vanguard of the contest, and bore the brunt of the advance sacrifice, thus shielding the other stocks and any balance of money left after the sale. The rights of the sureties between themselves were fixed by the insolvency of the broker and the necessity of a sale to free the whole of the property from the unwarranted act of the person to whom it was first pledged. Those rights could not be changed or determined by any hazard of chance in the order of sale, or by any selection of the pledgee bank. The right of redemption existed to relieve that burden, and, if all the sureties had united for that purpose, so that the bank was obliged to accept the full sum tendered, the several contributions would have been rated proportionately to the extent of the loss or injury. Though the right of redemption was lost by nonaction, the equities survive. Therefore, my conclusion is:

1. The remaining security should be sold as impressed by the trust for contribution.

2. The proceeds and any balance in the bank should be distributed upon the ratio of the loss of each of the parties pledging securities, including Walker & Warren.

3. A personal judgment for the deficiency should go in favor of the plaintiff against Cuthbert, and also in favor of those defendants who served an affirmative answer upon the attorney for Cuthbert.

The evidence is insufficient for me to determine and adjust the amounts as between the sureties, in the absence of the books of Cuthbert & Co., and, therefore, unless the counsel can substantially agree upon the amount of loss of each of the original pledgors, there must be a reference for that purpose. I have no difficulty, however, as between the pledgors and Cuthbert, in applying the usual presumptive rules calling for an account, and giving judgment upon the evidence as it now stands for a deficiency, after deducting the costs of the action and the payments reached. Costs and an additional allowance should be given to each party recovering, and to the bank and the receiver. The latter was obliged, under the circumstances, to protect his trust, and gather in any remnants which an investigation might disclose. He should be, to some extent, at least, indemnified. Let counsel prepare proposed decision and judgment, and submit, with proof of service.

Ordered accordingly.