### In re LEAVITT & GRANT.

(Circuit Court of Appeals, Second Circuit. June 2, 1914.)

#### No. 262.

BANKRUPTCY (§ 155*) — BROKERS — WRONGFUL CONVERSION OF SECURITIES — RIGHTS OF OWNERS.

Bankrupts, who were brokers, wrongfully pledged securities owned by customers as collateral for a loan in their bank. At the time of the bankruptcy they had a general deposit of $12,000 to their credit in their account, which the bank, as authorized, applied on their notes, and also sold the collateral, which produced a surplus. *Held*, that the owners of the securities were subrogated to the rights of the bank in the deposit, and were entitled to the $12,000 as against the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

Petitions to Revise and Appeals from Order of the District Court of the United States for the Southern District of New York.

In the matter of Leavitt & Grant, bankrupts. William Marley and seven other claimants of a fund in the hands of the trustee appeal from and petition to revise an order of the District Court. Reversed.

E. Bromberger, C. T. Payne, B. L. Peck, Franklin Taylor, and E. Vandewater, all of New York City, for petitioners.

L. W. Wright and H. M. Stevenson, both of New York City, for respondent.

Before COXE, Circuit Judge, and HAND and MAYER, District Judges.

HAND, District Judge. In this case the brokers wrongfully pledged securities belonging to their customers as collateral for a loan in their bank. It so happened on the day of the failure that their deposit in the bank amounted to some $12,000. Upon the failure, the bank, in accordance with a collateral note to that effect, as well as with their right at law, applied the deposit upon the note and sold the securities. The question is whether in marshaling the balance the trustee may withdraw the amount of the deposit or not. It seems to us that the case is only another illustration of the familiar doctrine of subrogation. Here the customers' goods became security, involuntarily, for a loan of the bankrupts. Their goods were sold, and the proceeds paid the loan; being by this subrogated, they may insist upon the position of the original creditor, with all his rights either to securities (Guild v. Butler, 127 Mass. 386) or to set-off (St. Croix Timber Co. v. Joseph, 142 Wis. 55, 124 N. W. 1049; Bechervaise v. Lewis, L. R. 7 C. P. 372). When Leavitt & Grant made the deposit, they subjected it to the right of set-off under the terms of the note. This was an express pledge, though

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it need not have been express, for the law creates it independently of the words of the parties.

As to the claim of Masters, it cannot be allowed. The rule in Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047, depends upon the fact that a broker bought back stock of similar character and kept it in his vaults. It is not to be supposed that the mere fact of replenishing a bank account was done with the intent of making up the deficiency. The difference between buying specific stock and getting cash is obvious.

The order is reversed, and fund will be distributed to the claimants, who can all be paid in full. Costs to the claimants in this court only.