## In re GAY & STURGIS.

(District Court, D. Massachusetts. April 2, 1918.)

### No. 20856.

1. BROKERS ⬦⟿24(2)—PLEDGES—RIGHTS OF CUSTOMER.
   Under the Massachusetts law a customer of a stockbroker, who turns over securities to him as collateral for a trading account, does not lose title to the securities and become simply a general creditor, but such securities remain the property of the customer, subject to the pledge; hence, where the broker repledged the collateral and defaulted, the customer, under familiar principles of marshaling of assets and subrogation, is entitled to any balance remaining after the sale of the collateral to satisfy the broker's obligation.

2. BANKRUPTCY ⬦⟿152—TRUSTEES—RIGHTS OF—MASSACHUSETTS RULE.
   Under Bankruptcy Act, § 47, giving the trustee the rights of a creditor holding a lien by legal or equitable proceedings, or having an execution returned unsatisfied, the trustee of a Massachusetts bankrupt takes the property of the debtor, personal as well as real, subject to whatever equitable interests existed at bankruptcy.

In Bankruptcy. In the matter of the bankruptcy of Gay & Sturgis. Order awarding a fund to claimant affirmed.

See, also, 224 Fed. 127; 233 Fed. 604.

David Stoneman and Stoneman, Gould & Stoneman, all of Boston, Mass., for trustees in bankruptcy.

Mark M. Horblit and Horblit & Wasserman, all of Boston, Mass., for Franklin T. Hammond.

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORTON, District Judge. The facts essential to the consideration of the questions of law upon which the case turns are not in dispute and are as follows:

The bankrupts were stockbrokers in Boston. They made a common-law assignment on April 21, 1914, and were adjudicated bankrupt on an involuntary petition filed May 22, 1914. The various claimants (in whose behalf the present petition is presented by a receiver appointed by the state court to act in their interests) were customers of the bankrupts, buying and selling through them on margin. As collateral security for their several accounts, each deposited with the bankrupts various stocks and bonds. The bankrupts, before their failure, pledged these stocks and bonds, with other securities of their own, to the Boston Penny Savings Bank on a note made by them to that bank for $125,000. The total collateral so pledged aggregated about $130,000 in value, of which about $106,000 belonged to the bankrupts, and about $24,000 to these claimants. The loan was closed out by the bank after the failure, and resulted in a surplus of collateral, amounting to about $17,000, partly in cash and partly in securities, which were later turned over by the bank to the trustees in bankruptcy, and constitute the fund here in controversy. The securities so turned back happened to be those which had belonged to the bankrupts; all the securities originally owned by the claimants were sold and applied on the note. At the time when the claimant's securities were pledged by the brokers, and at all times thereafter, as I understand, the balance of each claimant's account was in his favor, so that the brokers had no actual claim against the collateral.

[1] The claimants contend that, as between them and Gay & Sturgis, the property of the latter was first to be applied in payment of the note, and that, the creditor having used the property of the claimants for that purpose (as it had a right to do), the claimants became subrogated to the bank's original rights against the property of Gay & Sturgis to reimburse them for the loss sustained. The trustees contend that under Massachusetts law a customer of a stockbroker, who turns over securities to him as collateral for a trading account, loses his title to the securities, and becomes simply a general creditor of the broker for the value thereof.

In Furber v. Dane, 203 Mass. 108, 89 N. E. 227, the customer, as here, deposited with the broker securities as collateral for a trading account, and they were pledged by the broker, with other securities belonging to him, as collateral upon a loan by a bank to him. Before the loan was closed out, the bank was notified by the customer that he owned certain of the collateral, and it was requested not to resort to that collateral until the other collateral had been exhausted. The result was, in that case, that the surplus collateral was composed in part of securities which had belonged to the customer. It was held that he was entitled to them as against the general creditors.

"After all the charges properly to be made against them [the securities] have been satisfied, the firm's special property in them no longer exists, and they should be returned to the general owner, if their identity has been preserved." Sheldon, J., supra.

It seems to follow that the securities belonging to the several claimants and deposited by them with Gay & Sturgis remained the property of the claimants, subject to the rights created by the pledge, and were still the property of the claimants when they were repledged on the bankrupts' note.

This being so, upon familiar principles of subrogation and marshaling of assets, the claimants, as between them and the brokers, would be entitled to the balance here in question. Baker v. Davis, 211 Mass. 429, 441, 97 N. E. 1094, 37 L. R. A. (N. S.) 944; Hutchinson v. Le Roy, 8 Am. Bankr. Rep. 20 (C. C. A. 1st Cir.); Id., 113 Fed. 202; Prairie Bank v. U. S., 164 U. S. 227, 232, 17 Sup. Ct. 142, 41 L. Ed. 412; Ex parte Alston, L. R. 4 Ch. App. 168; In re Leavitt & Grant, 215 Fed. 901, 132 C. C. A. 139.

It is true that in Furber v. Dane the customer gave notice to the bank, and his securities were retained by it in specie; but without those facts the decision would, I think, have been the same. To emphasize notice in cases of this character is to penalize the ordinary customer, and to give the advantage to those who happen to be so connected with stock transactions as to get early knowledge of the failure and know what must be done to protect their interests. In McBride v. Potter-Lovell Co., 169 Mass. 7, at page 9, 47 N. E. 242, 61 Am. St. Rep. 265, the demand by one of the security owners for the return of its security was said by the court to be "immaterial," and the demandant was accorded no priority over those who made no such demands.

[2] The final question is whether the trustee in bankruptcy has greater rights against the claimants than the bankrupts themselves would have had. Section 47 of the act (Act July 1, 1898, c. 541, 30 Stat. 557 [Comp. St. 1916, § 9631]), which is relied on by the trustee, is not the equivalent, so far as he is concerned, of an actual attachment or seizure; his rights are those of a creditor "holding a lien," or an unsatisfied execution. Under Massachusetts law, such a person has no greater rights in the property of the debtor than any other creditor. It recognizes only actual or constructive seizure by legal or equitable process. The trustee takes the property of the debtor, personal as well as real, subject to whatever equitable interests in it exist at the time of the failure. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275; Clark v. Snelling, 205 Fed. 240, 123 C. C. A. 430 (C. C. A. 1st Cir.); In re Floyd Scott Co., 228 Fed. 506, 143 C. C. A. 88 (C. C. A. 1st Cir.).

It follows that the order of the referee, adjudging the fund to be the property of the petitioner, was right, and should be affirmed.

So ordered.