JOHNSON et al. v. BIXBY et al. (two cases).

(Circuit Court of Appeals, Eighth Circuit.   May 23, 1918.   Rehearing Denied September 11, 1918.)

Nos. 190, 5017.

1. CORPORATIONS ☞123(11)—UNAUTHORIZED HYPOTHECATION—RIGHTS OF INNOCENT PLEDGEE.
   A brokerage partnership's unauthorized hypothecation of shares of stock indorsed in blank to an innocent pledgee was binding.

2. CORPORATIONS ☞123(24)—PLEDGE OF STOCK—INDEBTEDNESS.
   Where the creditor of an insolvent brokerage partnership on an open account knew, before the account had been closed, a balance struck, and payment rendered, that a large existing debt could not possibly be materially reduced, the existence of an indebtedness was clear, enabling it to foreclose the pledged stock.

3. CORPORATIONS ☞123(24)—SALE—AMOUNT OF INDEBTEDNESS.
   Where a brokerage partnership pledged its customers' shares of stock, deposited with it, to an innocent pledgee, to secure an indebtedness, the pledgee, on default, could sell any or all of it; but, if it sold it piecemeal, it was required to stop when the proceeds were unquestionably enough to satisfy all possible claims.

4. BANKRUPTCY ☞345—PROCEEDS OF SALE—CONTRIBUTION.
   Where shares of stock deposited by customers with a brokerage partnership were, before bankruptcy of the partnership, wrongfully pledged by it to secure its indebtedness to an innocent pledgee, and after bankruptcy, pledgee sold enough of the stock of customers A and B to pay the indebtedness, and thereafter, in addition, sold stock of customer C, the latter, the proceeds of the sale of whose stock were traceable intact into bankrupt's assets, was entitled thereto without contribution as to customers A and B.

Petition to Revise Order of, and Appeal from, the District Court of the United States for the Eastern District of Missouri; Jacob Trieber and David P. Dyer, Judges.

Contest by James B. Johnson, August Schoellhorn, and Fred F. Bixby for priority in the assets of the bankrupt estate of Payne & Becker, a partnership, as against W. L. Howe, trustee, etc.   From the District Court's order, modifying the disposition made by the referee, Johnson and Schoellhorn petition to revise the order, and also appeal from such order.   Petition to revise dismissed, and judgment affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Randolph Laughlin, of St. Louis, Mo. (Emil A. Roebke and L. E. Richardson, both of St. Louis, Mo., on the brief), for petitioners and appellants.

Frank H. Sullivan, of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, on the brief), for respondents and appellees.

Before HOOK, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge.   This is a contest between three parties, Johnson, Schoellhorn, and Bixby, for priority in the assets of the bankrupt estate of Payne & Becker, a brokerage partnership.   Each of these three parties had deposited with the bankrupt, under different arrangements and agreements, certain shares of stock, indorsed in blank; none of these deposits, however, authorizing the subsequent use made of the shares by the bankrupt.   Shortly after securing the shares the bankrupt pledged them to its Chicago correspondent, Finley, Barrell & Co., as collateral to secure existing and future indebtedness.   Some time after this had been done the bankrupt became financially involved.   At that time Finley, Barrell & Co. had closed out all of its dealings with the bankrupt, except one small transaction in New England stock. Immediately upon ascertaining the financial difficulties of the bankrupt, Finley, Barrell & Co. proceeded to realize on much of the pledged collateral of all kinds which it held, including the shares of the three parties here involved.   In the course of doing this it sold a large amount of collateral not here involved, and the shares belonging to Johnson for $4,183.50, and those belonging to Schoellhorn for $12,217. The next day it sold the Bixby stock for $5,435.50.   The sale of the collateral up to the time the Bixby shares were sold was sufficient to pay all indebtedness due from the bankrupt to Finley, Barrell & Co., and leave an excess of $3,356.65, due the bankrupt.   The subsequent closing out of the New England stock (the day following sale of the Bixby stock) resulted in a loss to Finley, Barrell & Co. of $746.56, thus leaving a final credit due the bankrupt of more than $2,500, without the proceeds of the Bixby shares, and of $8,101.65, including such proceeds.   This fund, and some shares, not here involved, which had been pledged with Finley, Barrell & Co., but not sold by them, were remitted to the trustee.   To this fund each of these contestants lays claim. The referee prorated the fund between the three on the basis of the amounts realized for the respective stocks.

Upon review, the District Court modified this disposition of the amount to payment in full of the Bixby claim and proration of the balance between Johnson and Schoellhorn.   A petition to revise and an appeal bring this order before us.   Several errors are pressed upon our attention, which will be noticed in turn.

[1] It is said that hypothecation of Bixby's stock by the bankrupt was no greater breach of trust than the hypothecation of the securities of Johnson and of Schoellhorn.   Without examining this contention, it may, for the purposes of this opinion, be taken that the bankrupt was without authority to hypothecate any of the stock.   The fact, however, is that it did pledge all of it, and, since the certificates were sign-

ed in blank and taken innocently by Finley, Barrell & Co., such pledge was binding.

[2] It is next contended that the sale of the Johnson and of the Schoellhorn stock was not a valid foreclosure of the pledge, because (a) the open account with Finley, Barrell & Co. was not a debt until the account had been closed, balance struck, and payment demanded, a result, it is claimed, not possible until the New England stock had been closed out, which was after the Bixby stock sale; (b) absence of notice to redeem; and (c) no application of payment until account was balanced several days after the stock sales took place. As to the first proposition, the testimony shows that on the day the Johnson and Schoellhorn stock was sold the status of the account was as follows: It had not been formally balanced upon the books, but the books showed that the bankrupt owed over $27,000, with but one unfinished item (the New England stock, closed out two days later with a loss of $746.56). Barrell & Co. knew with fair accuracy upon that date what would be the result of disposing of the New England stock, so that they knew to a certainty that the final debt of the bankrupt could be little altered from what their books then showed it to be. With a large existing debt, which could not possibly be materially reduced, due from an insolvent debtor, the existence of an indebtedness is clear. As to the second proposition, it is enough to say that neither the bankrupt, which made the pledge, nor the trustee, who succeeded to his rights, has complained of any lack of opportunity to redeem. These claimants cannot at the same time contest the pledge and claim protection through it. The third proposition is answered by the testimony showing the credit to the bankrupt account, as of the day of sale, of the amount realized from the Johnson and Schoellhorn stock and other collateral not here involved. This credit overbalanced the then debit by $3,356.65. We find no objection to the foreclosure and application of this collateral.

[3, 4] Under the title "Potentiality of Payment Does Not Constitute Payment Itself," it is contended there was no application of the proceeds of the earlier sales of collateral until after sale of the Bixby stock, therefore Bixby cannot claim that the sale of his stock was unnecessary; that Finley, Barrell & Co. were not restricted to the debt of the bankrupt, but could collect the entire collateral; that even if there had been full payment as the result of prior sales of collateral, yet Bixby must share in the ultimate fund with Johnson and Schoellhorn on equal terms, because of the doctrine of contribution. As above stated, the evidence shows the application of the proceeds of the prior sales before the Bixby sales, and it shows that such prior sales had left a credit far beyond what was necessary to absorb any possible loss upon the New England stock, which was the sole source of liability not then definitely determined. A considerable amount of stock, including all of that here involved, had been pledged for the sole purpose of collaterally securing this indebtedness. The pledgee could sell any or all of it for that purpose. But, if it elected to dispose of the collateral gradually by piecemeal, then it must stop when the proceeds thereof were unquestionably enough to satisfy all possible

claim. The entire purpose of the pledge had then been served, and any collateral remaining must be returned to the pledgor.

As to contribution, the pledgee had a right to sell the Johnson and the Schoellhorn stock and apply the proceeds, because such action was. necessary to pay its debt. So far as this record shows, the other collateral sold that day belonged to the bankrupt. The balance of such proceeds after payment was, so far as the pledgee was concerned, due the pledgor. But as it sprang from stock wrongfully pledged, and can be traced by the owners of that stock, it may be made subject to their superior rights. It is the only fund that can be so followed by them. This measures the maximum residue of their converted property which can be legally identified. The then unsold collateral (including the Bixby stock) was not in æquali jure with the proceeds of the prior sales. This collateral was burdened with no obligation of contribution. It was at that time freed from the pledge. No such obligation originated in the mere fact of a subsequent wrongful sale by the pledgee. No part of the proceeds of the Bixby stock was or, under the circumstances, could properly be applied to the debt. The entire proceeds of that sale remain intact, and can be traced. The mere fact that such were transmitted to the trustee in a common sum or payment with the above balance does not lessen Bixby's right therein. It does not create a right in Johnson or Schoellhorn to any part thereof.

The judgment of the trial court was correct, and is affirmed. The petition to revise is dismissed.

