In re GREEN et al.

Petition of MULLER.

(Circuit Court of Appeals, Second Circuit.
April 5, 1926.)

No. 287.

1. Brokers ⬤⇒35—Under New York law, broker's failure to redeem and return to customer pledged securities on closing of account amounts to a conversion thereof.

Under law of New York, broker's failure to redeem and return to customer collateral securities deposited by customer on closing of account is a conversion thereof.

2. Bankruptcy ⬤⇒140(3)—Broker's failure through financial inability to redeem and return to customer collateral securities pledged held not a conversion, entitling customer to preferred claim in bankruptcy.

Where broker, when customer closed his account, was financially unable to redeem collateral securities belonging to customer, which he had pledged, and on following day was thrown into bankruptcy, *held*, his failure through such inability to return the pledged collateral, since it did not amount to an assertion of dominion, was not a conversion thereof, entitling customer to a preferred claim.

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Louis Green and others. Petition by Emil A. Muller, claimant, to revise an order of the district court denying in part his claim to priority. Affirmed.

Appeal from an order of the District Court for the Southern District of New York, allowing the appellant part of the proceeds of certain securities in the trustee's hands, denying him the remainder, and liquidating his claim as a general creditor for the part denied. The facts are as follows:

The bankrupts were stockbrokers doing the ordinary business in the city of New York. Petition was filed against them on March 2, 1922, and they were adjudicated on March 15th following. On December 5, 1921, Muller began a series of purchases and sales of securities through them, depositing with them some collateral on December 16th to cover his margins. The parties apparently had no express understanding, and relied upon the implied terms obtaining in such cases, except that after every purchase and sale the bankrupts delivered to Muller a note of confirmation, which contained the following language, plainly printed in colored ink: "All securities from time to time carried in the customer's margin account or deposited to protect the same may be loaned by the bro-

ker, or may be pledged by him, either separately or together with other securities, either for the sum due thereon or for a greater sum, all without further notice to the customer." At the end of each month an account of the transactions of that month was likewise sent, which contained the following statement: "All securities carried for your account or deposited to secure the same may be carried in our general loans and may be bought or sold at public or private sale without notice." Muller accepted these confirmations and statements without objection, and continued to buy and sell thereafter. He did not claim to have been in ignorance of the language quoted.

Acting under the supposed consent so granted, the bankrupt used Muller's collateral in their general loans, pledging it as their needs required, without regard to the amount of his debt to them. It therefore resulted on February 28, 1922, that substantially all the collateral was in pledge and out of the bankrupt's control. On that day Muller closed out his account by directing the bankrupts to sell enough of his securities to pay his debit balance and leave a substantial credit to his account. On March 1st he demanded the amount of this balance, together with all his collateral. The bankrupts paid him part of the balance and delivered him $4,000 of his securities, but failed to deliver the balance. It does not appear what, if any, excuse they gave, or why they failed to redeem them from the pledge, but as the bankruptcy happened on the next day they were presumably unable to do so.

The collaterals were found in three loans, mingled with the securities of other creditors. The pledgee closed out each loan and delivered to the trustee the balance. Out of the balances the master awarded Muller that proportion which his securities bore to the total value of customers' securities in pledge, making him share the burden of the loan equally with the rest. The appeal is upon the theory that, by paying his balance on February 28th, the collateral became free and the bankrupts had no further right to pledge it. Their failure to withdraw it from the loans was a conversion, which put the appellant in a preferred class, and entitled him to a priority in the balance of each loan.

Joseph Dannenberg, of New York City (Francis L. Kohlman and Sydney Krause, both of New York City, of counsel), for appellant.

Robert P. Levis, of New York City (Walter D. Wile, of New York City, of counsel), for trustee.

Max E. Sanders, of New York City (Walter D. Wile, of New York City, of counsel), for reclaimants.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] As Muller did not swear that he had not read the printed matter on the confirmation slips, and as he had not given any directions contrary to them, we think that Heaphy v. Kerr, 190 App. Div. 810, 180 N. Y. S. 542, affirmed 232 N. Y. 526, 134 N. E. 557, does not apply. Indeed, we do not understand that he claims that the bankrupts' pledge of the collateral was originally a conversion. But it is said that their failure subsequently to redeem it, their refusal to comply with his demand, was such. It must be at once quite frankly admitted that this is the law of New York. Lawrence v. Maxwell, 53 N. Y. 19; Rothschild v. Allen, 90 App. Div. 233, 86 N. Y. S. 42, affirmed 180 N. Y. 561, 73 N. E. 1132. Turner v. Schwarz, 140 Md. 465, 117 A. 904, 24 A. L. R. 444, did not involve the point, because the customer had given no consent to a repledge for more than the amount of his own debt.

[2] We, of course, recognize the weight of the authority of those cases, not only because of the respectability of the court, but because of its constant occupation with matters of this kind. However, the subject is one where we may not avoid an independent responsibility, and we cannot agree that the failure of the broker to withdraw the securities from his loans is a conversion, when he is no longer financially able to do so. The refusal of a demand for delivery by the owner of goods is, indeed, ordinarily sufficient evidence of a conversion, but it is evidence only, because the conversion itself must consist of some positive assertion of dominion. Heald v. Carey, 11 C. B. 977; Fouldes v. Willoughby, 8 M. & W. 540; Alexander v. Southey, 5 B. & Ald. 247; Fidelity T. & T. Assoc. v. First Nat. Bank, 277 Pa. 401, 407, 121 A. 505.

This is very clearly shown by those cases which hold that, when the defendant has no control over the property, even though that be because of an earlier conversion, his refusal is not a conversion. Rushworth v. Taylor, 3 Q. B. 699; Towns v. Lewis, 7 Q. B. 608; Canot v. Hughes, 2 Scott, 663; Edwards v. Hooper, 11 M. & W. 383; Wilkerson v. Whalley, 5 Man. & G. 590; Latter v. White, L. R. 5 H. L. 578 (detinue); Carr v. Clough, 26 N. H. 290, 59 Am. Dec. 345; Knapp v. Winchester, 11 Vt. 351; Johnson v. Couillard, 4 Allen (Mass.) 446; De Young v. Frank A. Andrews Co., 214 Mass. 47, 100 N. E. 1080; Arthur McArthur Co. v. Beals, 243 Mass. 449, 137 N. E. 697. An insolvent broker is as incapable of redeeming the securities as though he had already destroyed them. That he is guilty of a wrong is, of course, beyond dispute, but it is the character of that wrong which is important here.

Therefore, when the bankrupts, having with Muller's consent pledged the securities, were unable to redeem them, we cannot see how their failure to comply with Muller's demand can be considered an assertion of dominion over them. There is no suggestion that they could have complied, and, as they were on the very verge of bankruptcy, we think that, even if the burden rested on the trustee to show their inability, he has sustained it prima facie. Lawrence v. Maxwell, 53 N. Y. 19, proceeds on the theory that the broker's right as pledgee is conditional upon the continued existence of the customer's debt, which, of course, is true, and that, as soon as it has been paid, his special property ends, which is also true. But it is equally true that his only act of commission in respect of the property is to pledge it, and that, although he pledges it upon the implied condition that his right in it shall cease when he is paid, his lawful power goes further, and its exercise establishes a right in the second pledgee independent of his own. The continued detention of the pledge by the second pledgee depends only upon the right so created; it requires no subsequent act of the broker. If, having the power to redeem, he without warrant refuses to exercise it, it may be argued, though we do not suggest properly argued, that that failure to act would be evidence of a positive assertion of dominion. But when he becomes incapable of acting, no matter how, there can be no such inference.

From this it is apparent that the broker's wrong is wholly contractual, only a breach of his promise to redeem. It is quite true, as is said in Lawrence v. Maxwell, 53 N. Y. 19, that he repledges the collateral at his peril, but the peril is that he will not be able to perform what he has agreed to do. His failure cannot retroactively make unlawful his last positive and lawful act, except by a patent fiction. The customer has suffered the hazard which he originally accepted, the chance that the broker might fail in his engagements. That is a wrong that all creditors equally suffer; it does not arise from any act of commission. Therefore we feel

bound to say that the bankrupts' refusal, more properly than their failure, to deliver the collateral, was not a conversion.

This ends the case, because all the complex doctrines which have grown up about the subject presuppose victims of a conversion. We need not, therefore, consider the relative "equities," which "cannot always be measured by a hard and fast rule." In re Ennis, ex parte Bamford, 187 F. 720, 723, 109 C. C. A. 468, 471 (C. C. A. 2). Between customers who have all authorized the broker's use of their property for his own purposes there can be no equities. Each has accepted the risk of his continued solvency; each has no claim beyond a ratable share in what may be left; there are no A and B groups, nor any occasion to examine the respective claims upon our sympathy of one who has paid down 50 per cent. and another who has paid all.

The practice, which apparently only the fear of committing felony could establish, by which brokers now generally secure in advance their customers' consent to what they all in fact must do to remain in business at all, will therefore clarify the law. It is perhaps fortunate, because the doctrines were singularly opaque, vague, and unreal, in that they corresponded with no practices upon which the parties in fact conducted their affairs.

Decree affirmed.