## WRIGHT v. BLANK.

### In re LAUZIER–WOLCOTT & CO.

Circuit Court of Appeals, Ninth Circuit.
July 1, 1927.

No. 5049.

1. Brokers ⬳23—Broker has implied authority to hypothicate securities deposited to cover margin trading account.

In the absence of an understanding to the contrary, broker has implied authority to hypothecate securities deposited to cover margin trading account.

2. Bankruptcy ⬳140(8)—Owner of securities wrongfully pledged by bankrupt broker has preference over owner of those pledged rightfully in trust fund realized.

In the trust fund realized by the trustee in bankruptcy of a brokerage firm from proceeds of pledged securities of customers, owners of those wrongfully hypothecated have preference over owners of those rightfully pledged.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

In the matter of Lauzier-Wolcott & Co., a partnership, bankrupt. W. I. Wright appeals from an order of the District Court. Affirmed.

W. I. Wright, of Butte, Mont., in pro. per.

Fred J. Furman, Thomas J. Walker, and William Meyer, all of Butte, Mont., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Lauzier-Wolcott & Co., copartners, were stockbrokers with principal offices at Butte, Mont. Not being members of the New York Stock Exchange, they transacted most of their business through A. A. Houseman & Co., a member of the Exchange. As found by the referee, they operated in a manner very similar to that explained at length in the opinion of the court in the case of Skiff v. Stoddard, 63 Conn. 216, 26 A. 874, 28 A. 104, 21 L. R. A. 102. On June 4, 1925, they posted a notice on their door that they were unable to meet their obligations, and thereafter they did not again open for business. Seven days later, both as a firm and as individuals, they were adjudged involuntary bankrupts. The matter was referred, and in due time Herman Blank was elected and qualified as trustee.

The appellant, W. I. Wright, was one of their numerous customers, and, being what is known as a margin trader, he kept on deposit with them, as is the custom, securities to protect them against loss. These securities, together with those of their other customers, they in turn hypothecated with Houseman & Co. as collateral for their obligations to that concern. At the close of business on June 3, 1925, they were indebted to Houseman & Co. in the net amount of $1,203,645.22, for which Houseman & Co. held collateral so deposited of the value of $1,454,123.72. Of this, collateral securities to the value of $6,769.31 were the property of the bankrupt, and the balance consisted of securities either belonging absolutely to their customers or purchased for them on margin. On June 4 and 5, 1925, upon being advised that Lauzier-Wolcott & Co. had closed their doors, Houseman & Co. sold sufficient of the collateral in their possession to liquidate the account, and thereafter turned over to the trustee a credit balance of $1,495.11 in cash, negotiable securities valued at $228,551.25, and nonnegotiable stocks, the value of which the record fails to disclose. Among the securities thus delivered to the trustee were certain items belonging to the appellant, all of which have been turned over to him by the trustee and are not now in dispute. The securities sold included United States Liberty Bonds of the face value of $1,050, which appellant owned outright, and which he had deposited with the bankrupts to cover his speculative account, and 200 shares of Northern Pacific stock, which the bankrupts had purchased for him upon margin. For this stock they had paid $12,520, and on account thereof appellant owed them a balance of $11,543.20.

It seems that immediately upon the adjudication in bankruptcy many petitions were filed by claimants of specific securities, or the proceeds of securities, which had come into the possession of the bankrupts, and which were either then in their possession or had been hypothecated as collateral with banks and brokers to secure their obligations. In numerous cases, where the rights of claimants seemed clear, the referee directed that their securities be delivered to them without hearing; but in other cases rights were so involved and uncertain that upon the petition of the trustee a hearing was ordered upon notice to all customers, substantially in the manner approved in the Whitehouse Case (C. C. A.) 293 F. 287. To this order and the notices pursuant thereto, 93 claimants responded; appellant being one of them. After a hearing in this so-called omnibus proceeding, the referee entered an order defining the rights of the several claimants, which was apparently acceptable to all parties other than this appellant. In general, the referee

held that all claimants should be grouped in two classes. In class A he put those whose securities had been delivered to the bankrupts simply for safe-keeping, or for sale and transfer, or had been purchased outright and fully paid for by the claimants, but had not yet been delivered to them, and in class B all those whose securities had been deposited as collateral on margin or trading accounts, or had been purchased by the bankrupts for claimants upon the ordinary cash margin. He held that the equities of members of class A were superior to those of class B, and directed that the former be first satisfied, and that the latter share pro rata in any remaining funds.

While appellant's original claim or petition covered the Liberty Bonds above described and now in question, the evidence adduced disclosed the fact that they had never come into the possession of the trustee, but had been sold by Houseman & Co. with other securities on June 4th, and for that reason the referee dismissed the claim, in so far as it related to them, "without prejudice to any further rights of said W. I. Wright to file a preferred claim for the proceeds thereof."

Accordingly, on January 30, 1926, by leave of court, appellant filed a petition to have such preference adjudicated, and a hearing was had, which resulted in an order dated June 14, 1926, placing the claim in the B class. Whereupon appellant petitioned for a review by the District Judge, who affirmed the order, and from such order of affirmance this appeal is prosecuted.

Of the suggestion made by the trustee that the referee was without power to permit the filing of the supplemental or second petition after the expiration of the period prescribed in the original order, it is necessary only to say that under the circumstances it was a matter clearly within his discretion.

Contending that the referee did not correctly or fully certify the evidence to the District Judge upon appellant's petition for review, appellant filed in the court below what is designated a motion to correct the referee's "transcript of the testimony." This he incorporates in the record here, but the motion was not supported by any verified showing, and in so far as appears was never presented to or passed upon by the court; nor is the court's action or failure to act in response thereof assigned as error.

Appellant also files here a motion for a writ directing the certification from the court below of certain files and exhibits. The notice of appeal referred to therein appellee concedes was duly filed and served, and in the view we take of the case the other matters are not thought to be material. The notice of appeal is deemed to be here, and accordingly the motion is denied.

Turning now to the merits, we should add to the facts already stated that on June 8, 1925, the day the petition in bankruptcy was filed, appellant attempted to tender to Lauzier-Wolcott & Co. the amount he owed them and demanded the return of his securities. The referee certifies that there was no showing of authority on the part of the firm's clerk to whom the tender was made to act in the premises, but even if, as appellant contends, the evidence before the referee, but not certified, established such authority, such a tender was without efficacy. Four days prior thereto the securities had been sold in New York, and, as the court below held, the tender was but an "idle gesture," which could in no wise affect the status of the trust funds then in the hands of Houseman & Co. Whatever might otherwise have been Houseman & Co.'s rights, plainly they had a right to sell if Lauzier-Wolcott & Co. had a right to hypothecate. There is no affirmative showing in the record that they were without such authority, and, even were we to resort to plaintiff's motion for correction of the referee's transcript, we would have only testimony to the effect that he had not affirmatively authorized them to rehypothecate them, and not that he had forbidden or agreed with them against such use. He concedes that the bonds had been held by them since 1921 as security to cover any indebtedness to them which he might incur by reason of cash borrowed, or an unpaid balance on the purchase price of additional securities. He doubtless knew they were transacting business for himself and other customers through Houseman & Co., and must have realized that to get funds or credit they would have to hypothecate the securities of their customers deposited with them to cover trading accounts.

[1, 2] As we have seen, the margin of his securities sold over his indebtedness was not unreasonably great. Such being the circumstances, the established rule seems to be that, in the absence of an understanding to the contrary, there is an implied authority in the broker to hypothecate. In re Ennis (C. C. A.) 187 F. 720; In re Toole (C. C. A.) 274 F. 340, 24 A. L. R. 470; Skiff v. Stoddard, 63 Conn. 198, 26 A. 874, 28 A. 104, 21 L. R. A. 102; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; In re Mills, 125 App. Div. 730, 110 N. Y. S. 314. The hypothecation being rightful, appellant's equities in the trust fund are inferior to those of claimants whose

securities were wrongfully hypothecated. In re Irving Whitehouse Co. (C. C. A.) 293 F. 287. The order was therefore correct in classifying appellant as a B claimant, and, having been put on an equal footing with all other claimants in that class, he has no just grievance.

There is much to be said for the view urged by appellant that he is entitled to be put in at least the B class in respect of the excess of $1,128 realized from the sale of the Northern Pacific stock over the amount of his indebtedness; though a margin purchase, the stock undoubtedly belonged to him. Thomas v. Taggart, 209 U. S. 389, 28 S. Ct. 519, 52 L. Ed. 845; Duel v. Hollins, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143. But, while we have sought some way to recognize the right, the procedural obstacles are found to be insurmountable. The difficulty is that appellant did not make any claim for this surplus. Under the most liberal construction, we fail to find in the supplemental petition, or in the order permitting it to be filed, or in appellant's testimony, any suggestion of the thought of either the appellant or the court that such a claim was involved. True, in his petition for a review of the referee's order there is a reference to the matter, and the lower court might in its discretion have permitted him to amend, and have sent the matter back to the referee for further hearing; but the record fails to show any application for such leave, and the memorandum decision below makes no reference to such a claim. Even were we to assume that it is within our power, we would not feel justified, after such a lapse of time, and where so many interests are involved, in sending the matter back, with directions to permit amendment and grant further hearing.

The order appealed from is affirmed, with costs to appellee.