## LEONARD v. HUNT et al.

## HOUGHTON v. SAME.

Circuit Court of Appeals, First Circuit.
November 19, 1929.

Nos. 2331, 2332.

Morris, District Judge, dissenting.

Leé M. Friedman, of Boston, Mass. (Paul D. Turner and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for appellants.

Leon R. Eyges and Atherton N. Hunt, both of Boston, Mass., for appellees.

Before ANDERSON, Circuit Judge, and MORRIS and HALE, District Judges.

ANDERSON, Circuit Judge. The appellants brought 10 years ago (October 14, 1919) two reclamation petitions against the trustees in bankruptcy of John W. Cawley, a stockbroker. The appellant Leonard claims 10 shares of Inspiration Copper Company common, certificate No. 36312; 10 shares American Agricultural Chemical Company common, certificate No.G. N. 2805; 20 shares Union Pacific Railway Company common, certificate No. A209457. The appellant Houghton claims 10 shares Continental Motors Company preferred, certificate No. OX526. These certificates were pledged with other securities for a bank loan, but survived the liquidation of that loan and are now admittedly in the hands of the bankrupt's trustees, and are the original or legal equivalent of the certificates deposited by the appellants as security for ordinary margin accounts. The cases were heard, seriatim, before three referees; the last referee denied the petitions. On review, his orders were affirmed by the District Court. No evidence is in the record. The referee's certificate sets forth:

"At the time of the filing of the petition and the adjudication there were large debit balances against each of the petitioners on the books of the bankrupt. The petitioners offered to prove that what the books of the bankrupt purported to show as purchases and sales by the bankrupt were in fact not real purchases and sales, but were 'bucketing' transactions. The purpose of this offer of proof was to show that as a matter of fact there was no real debit balance against the petitioners and that, therefore, the securities which they had pledged with the bankrupt were wrongfully repledged by him. I excluded this offer of proof as immaterial and ruled that as a matter of law the bankrupt had the right on such accounts as these to repledge the securities of the petitioners regardless of whether the petitioners had a credit or debit balance with the bankrupt."

The learned District Judge says on this point:

"While I agree with the conclusions reached by the referee that, under the particular circumstances of the case presented, the fact that the broker and customer had been engaged in bucketing transactions would not render the rehypothecation unlawful, I would not feel like ruling, as a matter of law, without important reservations, that a broker had the right to repledge securities of his customer, regardless of whether the customer had a debit or credit balance, though the Massachusetts decisions would seem to so indicate. Furber v. Dane, supra [203 Mass. 108, 89 N. E. 227]; Boston Safe-Deposit & Trust Co. v. Adams, 224 Mass. 442, 444, 113 N. E. 277, L. R. A. 1916F, 488.

It is sufficient for the purposes of this case to agree with the referee that the petitioners would not have improved their case by showing that they had participated in transactions which were condemned by the statutes of Massachusetts. G. L. c. 137, §§ 4–7, and chapter 271, § 36."

We think the learned District Judge was in error in treating the offer of proof as indicating that the appellants *"had participated* in transactions * * * condemned by the statutes of Massachusetts." Such is not the fair construction of the offer as shown by the referee's certificate, supra. On the contrary, the offer was to show that the appellants gave the stockbroker orders for purchase and sales of securities, fully intending to perform; that the stockbroker made no such purchase or sales, but bucketed the transactions, and thus created false debit balances against these customers. We think this evidence was competent. If there were no actual purchases or sales, there were no real debit balances; the stocks deposited were not held as collateral for margin accounts; there were no margin accounts of these appellants; the custom of brokers is not applicable; the appellants' stocks were wrongfully repledged by the broker, not rightfully, as the referee "concluded as a matter of law."

The petitioners' rights must, in the alternative, be considered on the hypothesis of wrongful repledging by the bankrupt.

The only parties before the court are the trustees in bankruptcy and these claimants, who have fully identified the securities they claim.

The court below held that the bankrupt's customers fell into two classes: First, those whose securities were wrongfully pledged (given preferential rights); and, second, those whose securities were rightfully pledged (given junior positions)—but ruled as to both classes that the owners of securities pledged for a bank loan made to the broker were, inter sese, cosureties, and that, if any of them did not appear to take their pro rata share, either preferential or nonpreferential,

such shares should go to the trustees in bankruptcy to augment the general estate. He quoted with approval from In re Toole, 274 F. 337, 344 (C. C. A. 2):

"We think that, when customers authorize their broker to pledge their securities for the payment of the broker's debts, each becomes to the extent of his pledge a surety for the payment of such indebtedness. As between themselves they become cosureties. All the collateral lawfully so pledged is subject to the same obligation and lien. The owners of the collateral, being in effect cosureties, must be entitled to contribution from each other for any loss sustained if the stock of one is sold to pay the debt for which the stock of the other was equally liable."

Concededly, the case must be determined under Massachusetts law. Bryant v. Swofford Bros., 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997. It is clear that this doctrine cannot be found clearly enunciated in any decision of the Supreme Court of the United States, or of the Supreme Judicial Court of Massachusetts, or of this Circuit Court of Appeals. Plainly under such circumstances as this record discloses, the general understanding in Massachusetts has always been that the claimants were entitled to their securities on paying the trustees what, if anything, they owe the bankrupt's estate. Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Thomas v. Taggart, 209 U. S. 385, 28 S. Ct. 519, 52 L. Ed. 845; Johnson v. Bixby (C. C. A.) 252 F. 103, 1 A. L. R. 660; Gorman v. Littlefield, 229 U. S. 19, 25, 33 S. Ct. 690, 57 L. Ed. 1047; Duel v. Hollins, 241 U. S. 523, 36 S. Ct. 615, 60 L. Ed. 1143. Compare Sutcliffe v. Cawley, 240 Mass. 231, 132 N. E. 406. A fortiori, if as the excluded evidence might have shown, the securities of these claimants were wrongfully pledged.

While there is undoubtedly confusion concerning the rights and obligations of the margin customers of a bankrupt stockbroker, we have no present occasion to write a thesis on that subject or to indulge in the futile task of endeavoring to reconcile the many court rulings, arising under a great variety of circumstances. See 37 Howard Law Rev. 860. But we understand the law of Massachusetts to permit the owner of identified securities surviving either a rightful or wrongful repledging by the bankrupt stockbroker, to get his property back. This doctrine works out at least as much approach towards justice as does the cosurety doctrine adopted by the learned District Judge, especially when con-

sidered in connection with the theory that the shares of nonclaiming cosureties should go for the benefit of general creditors. This aspect of the doctrine seems to us to be grounded neither on sound logic nor on essential justice. If margin customers may, at the will of the stockbroker, be made cosureties for the broker's bank loans, we perceive no reason why the cosurety doctrine should not be carried to its logical and legal result, to wit, equality, in the whole fund, among such cosureties as insist on their rights. A group of cosureties have no interest in contributing to the bankrupt stockholder's general estate; their failure to insist upon their rights as cosureties has no legal tendency to show an election to give the general creditors the benefit of their shares in any available surplus.

Undoubtedly, the general theory underlying the Bankruptcy Act (11 USCA) is that equality is equity, but, like most human ideals, this can be only approximately attained. If we assume that a bankrupt has, shortly before adjudication, bought goods on such fraudulent representations as to ground rescission, creditor A may find his goods intact and successfully replevy them; creditor B may find his goods have been turned into cash, thus remitting B to the meager rights of an unsecured creditor. Here is very great inequality among persons having almost the same relations to the bankrupt. So also as to unlawful preferences; the four-months limitation frequently results in very gross inequality. We might multiply illustrations; enough now to hold that well-established principles of property rights should not be overturned in a chimerical search for equality of burdens among the margin customers of bankrupt stockbrokers.

Careful study of a large number of cases (none binding on us) has not convinced us that the Massachusetts rule is so unsound that this court ought now to undertake to change it. In re McIntyre, Pippey's Appeal (C. C. A.) 181 F. 955; In re Gay & Sturgis (D. C.) 251 F. 420; In re Codman et al. (D. C.) 284 F. 273; In re Codman, Fletcher & Co. (C. C. A.) 287 F. 806; Sutcliffe v. Cawley, 240 Mass. 231, 132 N. E. 406; In re Ennis et al. (C. C. A.) 187 F. 720; In re J. C. Wilson & Co. (D. C.) 252 F. 631; In re Toole (C. C. A.) 274 F. 337; In re Archer, Harvey & Co. (D. C.) 289 F. 267; In re Walter J. Schmidt & Co. (D. C.) 298 F. 314; Duncan v. Johnston & Co. (C. C. A.) 3 F.(2d) 422; In re Green et al. (C. C. A.) 11 F.(2d) 676; In re Lauzier-Wolcott & Co. (C. C. A.) 20 F.(2d) 591; In re Kardos et al. (C. C. A.) 27 F. (2d) 690; Asylum of St. Vincent de Paul v.

McGuire, 239 N. Y. 375, 146 N. E. 632, 38 A. L. R. 1214; Whitlock v. Seaboard National Bank, 29 Misc. Rep. 84, 60 N. Y. S. 611; Cf. also Wood v. Hayes, 15 Gray (Mass.) 375; Covell v. Loud, 135 Mass. 41, 46 Am. Rep. 446; Weston v. Jordan, 168 Mass. 401, 47 N. E. 133; McBride v. Potter-Lovell Co., 169 Mass. 7, 47 N. E. 242, 61 Am. St. Rep. 265; Chase v. City of Boston, 180 Mass. 459, 62 N. E. 1059; Rice v. Winslow, 180 Mass. 500, 62 N. E. 1057.

The result is that the decisions below must be reversed and the reclamation petitions sustained in each case.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.

MORRIS, District Judge (dissenting). I am unable to concur in the opinion of the majority. The petitioners pledged their shares of stock with their broker, the bankrupt, on margin accounts. It is conceded that under an established custom of dealing a broker has the right, in the absence of special contract, to repledge such securities for his own debt. It is found as a fact that the petitioners knew the bankrupt was repledging their stock and made no objection thereto. Both as a conclusion of fact and a conclusion of law the stocks were rightfully repledged by the bankrupt. They were repledged with securities of other individuals that have been sold by the pledgee. The petitioners were cosureties with all others whose stocks were repledged for the same debt. This certainly must be true down to the date of the liquidation of the bankrupt's debt. It is not equitable to permit a bank to which securities are so repledged to select one person's stock for sale and return another's intact. By so doing financial ruin might result to one person, to the enrichment of another more favored client of the pledgee. I agree with the majority opinion that the case must be determined by the rule prevailing in Massachusetts, but I am not convinced from an examination of the only two cases in point that any such inequitable rule is firmly established in the jurisprudence of the commonwealth.

Compare Furber v. Dane, 203 Mass. 108, 89 N. E. 227, with the later case of Sutcliffe v. Cawley, 240 Mass. 231, 132 N. E. 406.

The trustee in bankruptcy has no interest in securities or cash so returned. All persons whose securities have been repledged for the same debt should be cited in, and a bill of interpleader filed by the trustee, that there may be contribution among those entitled.