bequests were made to each of three children, and the remainder to the bankrupt.

On April 11, 1931, the estate was appraised at $22,850. Before the wife's death, the bankrupt, for the community, owned and operated a grocery business, and continued to operate the same thereafter, replacing stock in trade as occasion demanded, and paid creditors of his business in the usual course. This continued until the 22d day of December, 1932, when the bankrupt made an assignment for the benefit of creditors.

On the 24th day of March, 1933, the bankrupt filed a petition in the probate court asking that there be set aside for him, as surviving spouse, in lieu of the homestead, property of the estate to the value of $3,000, including the home and furniture. This petition set forth that the funeral expenses and expenses of last illness of the deceased had been paid, that the costs of administration had been provided for, and that neither the decedent nor the surviving spouse had filed a declaration of homestead.

On April 20, 1933, an order of adjudication was entered in bankruptcy. On June 6, 1933, a hearing was had on the bankrupt's petition for a homestead award upon due notice, as provided by state law, and an order was entered by the probate court setting aside the home, furniture, and household goods of the appraised value of $1,700, and some other property not in issue.

 I think the referee erred in the consideration of this claim of exemption by ignoring the state court probate court proceedings. The probate court of the state acquired jurisdiction of the entire estate, and would retain it until disposed of in the manner provided by law. The irregular conduct of the executor would in no sense oust the probate court of jurisdiction. Adjudication in bankruptcy did not oust the probate court's possession of the estate. While it had jurisdiction, it had the right to make such disposition of the property in due course of administration as was warranted by the law of the state, and it would appear from the record that the probate court proceeded in harmony with section 1473, Rem. Comp. Stat. of Washington, as amended by Laws Wash. 1927, p. 230, § 1 which provides that:

"If it shall be made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, then the court after hearing and upon being satisfied that the funeral expenses, expenses of last sickness and of administration have been paid or provided for, and upon petition for that purpose, shall award and set off to the surviving spouse, if any, property of the estate, either community or separate, not exceeding the value of three thousand dollars * * * and such award shall be made by an order or judgment of the court and shall vest the absolute title, and thereafter there shall be no further administration upon such portion of the estate so set off, but the remainder of the estate shall be settled as other estates."

It is obvious that the probate court had jurisdiction. It entered judgment in harmony with the statute. This judgment has not been reversed or modified, and is res judicata in this court of the matter in issue. The order of the referee is therefore reversed, except as hereinbefore affirmed.

### In re PHŒNIX BOND & MORTGAGE CO.
### No. 47605.

District Court, D. Massachusetts.
Feb. 23, 1934.

Edward O. Proctor and Withington, Cross, Proctor & Park, all of Boston, Mass., for trustee in bankruptcy.

George L. Dillaway, of Boston, Mass., for petitioner.

BREWSTER, District Judge.

Review on certificate of an order of the referee entered in a reclamation proceeding which authorized the return to the petitioner of certain securities in the possession of the trustee in bankruptcy upon payment of $5,000, which the petitioner has received as dividends from the bankrupt, and upon the further payment by her of any debit balance due from her to the bankrupt estate on her open account.

I am unable to affirm this order.

The certificate is accompanied by an agreed statement of facts, from which the following appears: That one McClaskey organized and was president, treasurer, and principal stockholder of the bankrupt corporation; that McClaskey, prior to the organization of the company, had acted for the petitioner as her adviser and broker in investment matters; that he had sold her stock in the bankrupt corporation upon which he had paid dividends aggregating $5,000, which were unlawfully paid. I do not understand that it is seriously disputed that the petitioner owed the bankrupt estate this amount.

Without going too much in detail into the transactions entered into by the bankrupt, apparently for the account of the petitioner, it is enough to say that, according to the books of the bankrupt, Mrs. Knapp owed a debit balance of $12,069.18. The books of a bankrupt broker, however, are not conclusive against its customers. They have a right to show that what appeared to be a debit balance was, in fact, a credit balance. Leonard v. Hunt (C. C. A.) 36 F.(2d) 13.

From the agreed statement of facts, it appears that the petitioner's account had been charged with the following items:

$26,764.00 for 480 shares Associated Gas & Electric.

$2,535.70 for 100 shares Fed. Cap. Pfd.

$2,502.00 for 25 shares American Water Works.

None of these stocks were ever transferred to the petitioner. For a time the bankrupt carried a sufficient number of shares of the Associated Gas & Electric Company to enable it to make deliveries of the 480 shares in that company, but the bankrupt never allocated any particular 480 shares to the petitioner's account. Respecting the other shares, the bankrupt never was in a position to make delivery of these shares to satisfy the petitioner and other customers. All of the shares were finally sold by the bankrupt, or its pledgees, without the knowledge or consent of the petitioner, and the account of the petitioner never received any credit on account of these shares or the sale thereof.

It also appears that the petitioner is entitled to a further credit of $1,456.90, representing the proceeds of 15 shares of J. S. Young Company stock belonging to the petitioner which was sold by the bankrupt on November 13, 1930, and for which no credit appears upon the books of the bankrupt.

It is also agreed that the market value, on the date of bankruptcy, of the stock which the bankrupt should have been holding for this petitioner was $15,660. I think, however, that this market value is not the extent of the bankrupt's liability arising from these transactions. I agree with the petitioner that she is entitled to receive credit for the full amount charged against her on account of these shares, which were never delivered to her and never set apart for her. Compare Crehan v. Megargel, 235 Mass. 279, 126 N. E. 477.

The Massachusetts law controls. Leonard v. Hunt, supra; Lavien v. Norman (C. C. A.) 55 F.(2d) 91.

If proper credits were given the petitioner for the sums improperly charged to her and for the 15 shares of J. S. Young Company sold, together with interest, the bankrupt's account would show a credit balance of over $24,000, against which she would be entitled to set off $5,000 which she owed the trustee in bankruptcy.

I do not conceive it my province to determine in these proceedings the exact amount of any claim for which petitioner may be permitted to prove. I have no doubt the parties can agree on this matter.

The petitioner is entitled to a return of the securities now in the possession of the trustee which she can identify as her own, without the payment of any money to the trustee.